VERNON J. BERT, TRUSTEE, FOR D. M. NELSON, ET AL., PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56594.   Promulgated July 15, 1936.

*George M. Wolcott, Esq.,* and *John E. McClure, Esq.,* for the petitioner.
*C. R. Marshall, Esq.,* for the respondent.

### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency in income tax for 1928 in the amount of $19,383.01. The deficiency has been asserted against the petitioner as trustee for a syndicate which the respondent has held to be an association taxable as a corporation.

By a memorandum opinion entered October 7, 1935, the Board held that petitioner was not an association taxable as a corporation for the year 1928 and entered its decision therein on November 5, 1935, in which it was:

ORDERED and DECIDED that there is no deficiency due from the petitioner for the year 1928 but that there has been an overpayment of tax in the amount of $19,383.01, which is refundable in accordance with section 504 of the Revenue Act of 1934.

On January 4, 1936, the respondent filed a motion to vacate the decision entered November 5, 1935, and to reconsider the memorandum opinion entered October 7, 1935. The bases for this motion are decisions of the Supreme Court of December 16, 1935, in *Morrissey* v. *Commissioner,* 296 U. S. 344; *Swanson* v. *Commissioner,* 296 U. S. 362; *Helvering* v. *Combs,* 296 U. S. 365; and *Helvering* v. *Coleman-Gilbert Associates,* 296 U. S. 369.

The decision entered November 5, 1935, was vacated by an order entered January 18, 1936. The memorandum opinion is hereby overruled and this opinion substituted therefor.

On January 11, 1928, D. M. Nelson, V. J. Bert, Carl Kresl, J. H. Rubel, D. L. Atkinson, A. S. Barrows, C. V. Williams, E. S. Parrish, and E. H. Powell, all department managers of Sears, Roebuck & Co., formed what they called a "syndicate" to buy and sell the stock of Sears, Roebuck & Co. A formal written agreement was executed by and between the parties named and Samuel H. Shevelson, trustee,

setting forth the manner in which the syndicate was to be organized and operated. The essential provisions of the agreement were that each of the members would lend to the syndicate 100 shares of his individually owned Sears, Roebuck & Co. stock to be used as collateral for loans on which the syndicate would operate; that the syndicate members would share the beneficial interest in the syndicate in proportion to the number of shares of Sears, Roebuck & Co. stock lent to the syndicate; that certificates of beneficial interest would be issued to the members, transferable on endorsement and surrender to the trustee; that the syndicate would operate by and through the trustee, who was authorized to borrow money on behalf of the syndicate, pledging the shares of Sears, Roebuck & Co. stock lent by the members, purchase and sell Sears, Roebuck & Co. stock at his discretion, receive dividends on the shares held by him, make additional assessments on the syndicate members in proportion to their interests for necessary expenses of the syndicate, and, upon termination of the syndicate's operations, to distribute the cash holdings to the members in proportion to their beneficial interests. The syndicate was to be terminated on or before December 31, 1931, unless extended by written consent of all the members. The trustee was given full power, as authorized in the agreement, to act for the syndicate in dealing with the public, but was subject to the majority control of the syndicate members. Meetings of the syndicate members might be called at any time by the trustee on a majority vote of the members and syndicate matters decided upon by a majority vote, proxies being permitted. The trustee might resign at any time by giving notice of 10 days, or be removed by a majority vote and a successor elected. The trustee was not to be personally liable for any act on behalf of the syndicate except for "willful wrongdoing or gross and willful abuse of his powers and discretion."

The syndicate was put into operation upon the execution of, and under the provisions of, the above described agreement.

The original trustee, Samuel H. Shevelson, died on February 25, 1928, and on February 27, 1928, one of the syndicate members, Vernon J. Bert, was elected to take his place.

The actual operation of the syndicate was very informal. No certificates of beneficial interest were ever issued and no formal meetings were ever held except for the purpose of electing the successor trustee after the original trustee's death. The nine men who comprised the syndicate membership were friends and fellow employees of long standing who had been in the habit of eating lunch together daily in the Sears, Roebuck & Co. lunch room. The idea of forming the syndicate originated from their conversations at the lunch table. It was explained by Vernon J. Bert in his testimony as follows:

We were busy men there in our regular business, and we thought that we would like to take advantage of opportunities to make a little extra money through speculation, and it was felt that we could better do it if we had one of our number sort of handle the detail, somebody having to be the spokesman acting for the other 8.

\*　　\*　　\*　　\*　　\*　　\*　　\*

I would say that written agreement was gotten up for two reasons. There was always the possibility there might be a death among our membership during the time of the pool, and then also I think that the trustee, Mr. Scherverson [Shevelson], felt there would [should] be some document which would hold him free from any financial contingency that might arise, any claim. \*　\*　\*

The original trustee, Samuel H. Shevelson, was not a member of the syndicate, but was an employee in the office of one of the members. He had no reputation as a stock market expert. Neither of the trustees of the syndicate received any compensation for his services.

The operations of the syndicate during its existence consisted of 11 purchases and 3 sales of Sears, Roebuck & Co. stock, the gross amount of the purchases being $571,622.50, and the gross amount of the sales being $742,643.53, and the net profits $165,735.54.

The decisions to buy and sell stock were arrived at in the informal discussions of the members at the lunch table. When a decision had been reached to buy or sell stock the trustee telephoned the order to an officer of the bank where the syndicate trading account was kept.

During the syndicate's operations the interest charged on loans by the banks was greater than the dividends on the shares of Sears, Roebuck & Co. stock held by the trustee, so that additional assessments of from $50 to $75 per month, amounting in the aggregate to $610 per member, were made against each member of the syndicate.

The syndicate was dissolved on September 14, 1928, and its assets were then distributed to the syndicate members. Each syndicate member received $19,025.06, representing a profit of $18,415.06 and the return of his assessment of $610. The original 100 shares of Sears, Roebuck & Co. stock which the syndicate members lent to the syndicate were also returned to them.

The individual members of the syndicate reported the amount of their profit from the operation of the syndicate in their income tax returns for 1928. The deficiency herein results from the respondent's determination that the syndicate was an association taxable as a corporation. Whether the respondent erred in so determining is the only question raised in this proceeding.

In our opinion this issue is controlled by the decisions of the Supreme Court in *Morrissey* v. *Commissioner*, 296 U. S. 344; *Swanson* v. *Commissioner*, 296 U. S. 362; *Helvering* v. *Combs*, 296 U. S. 365; and *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369.

In the cases cited the Supreme Court has made it plain that the statutory definition of an association, as used in the Revenue Act of

1928 and prior revenue acts, includes such organizations as the one here under consideration where a group of persons unite and carry on a business enterprise in the manner above described.

In view of the broad scope of the rule laid down in those cases, it is unnecessary, we think, to point out the applicability of the Court's reasoning therein to the facts presented in the instant case. The following language from *Helvering* v. *Combs, supra*, however, appears to be directly in point and conclusive:

> In considering whether an association was created, the fact that the beneficiaries did not exercise control is not determinative. *Hecht* v. *Malley*, 265 U. S. 144; *Morrissey* v. *Commissioner, supra*. The parties joined in a common enterprise for the transaction of business, and the beneficiaries who contributed money for that purpose became associated in the enterprise according to the terms of the arrangement. The essential features of the enterprise were not affected by the fact that the parties confined their operations to one oil well. See *Swanson* v. *Commissioner*, decided this day. Parties may form an association for a small business as well as for a large one. Here, through the medium of a trust the parties secured centralized management of their enterprise, and its continuity during the trust term without termination or interruption by death or changes in the ownership of interests, and with limited liability and transferable beneficial interests evidenced by certificates. Entering into a joint undertaking they avoided the characteristic responsibilities of partners and secured advantages analogous to those which pertain to corporate organization. The fact that meetings were not held or that particular forms of corporate procedure were absent is not controlling. *Morrissey* v. *Commissioner, supra*.
>
> We think that the taxpayer was taxable as an association. * * *

Upon authority of the cases cited we hold that the petitioner during and for the year 1928 was an association taxable as a corporation.

Reviewed by the Board.

*Judgment will be entered for the respondent.*