GLADSTONE COMPANY, LIMITED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79155. Promulgated March 30, 1937.

*Frank W. Chambers, Esq.*, for the petitioner.

*W. Frank Gibbs, Esq.*, and *Bernard D. Daniels, Esq.*, for the respondent.

OPINION.

ARNOLD: This proceeding involves a deficiency in income tax in the amount of $15,765.12 for the calendar year 1931 and a delinquency penalty of $3,941.28.

Two questions are presented—(1) whether under the facts of this case in the computation of petitioner's net income it is entitled to deductions allowed under section 23 (p) of the Revenue Act of 1928, (2) whether the item of $99,960 received by petitioner in 1931 from the Brady Realty & Securities Co. was in fact a dividend received

by petitioner on the stock of a domestic corporation within the United States, or whether it represented a capital transaction.

The petitioner is a corporation, organized under the laws of the Colony of Newfoundland, with its principal office at Columbus Hall, St. Johns, Newfoundland. It was organized in December 1930. The only assets owned by petitioner were 1,428 shares of stock of the Brady Realty & Securities Co., a domestic corporation located within the United States, and petitioner's only source of income was the dividends received on that stock.

The Brady Realty & Securities Co. was organized by James Cox Brady in 1923. The total stock issued by the corporation was issued to James Cox Brady in his name in trust for his wife and five children, one of whom was Ruth Brady Scott. James Cox Brady died in 1930 and each of the children received one-seventh of the stock so held and Mrs. Brady received two-sevenths.

During the year 1929 Ruth Brady married Michael F. Scott, a citizen of England. Shortly after the marriage they went to England, where they have continuously resided except for visits to the United States.

The Brady Realty & Securities Co. paid no dividends during the lifetime of James Cox Brady, the earnings of the company being allowed to accumulate. On August 20, 1930, after the death of James Cox Brady, the company declared an initial dividend of $70 per share, payable December 31, 1930, to stockholders of record September 2, 1930.

On December 30, 1930, Ruth Brady Scott transferred 1,428 shares of stock of the Brady Realty & Securities Co. to petitioner, receiving for the stock $492,000 in bonds of the petitioner and $5,000 of its capital stock. The bonds were payable serially, $12,000 at a time, over a period of years. At the same time Ruth Brady Scott assigned and transferred to petitioner the dividends payable to her on December 31, 1930, on the 1,428 shares of Brady Realty & Securities Co. stock, for which she received one bond having a face value of $100,000. This was designated as an "A" bond and was not a part of the series received for the stock. The dividend check in the sum of $99,960 was paid to the petitioner pursuant to the assignment order on or about January 7, 1931. When the $100,000 bond was issued in payment for the dividend check it was understood that the bond was to be retired with the dividend. Upon receipt of the dividend petitioner immediately paid to Ruth Brady Scott the $100,000 face value of the "A" bond.

The petitioner received dividends on the 1,428 shares of Brady Realty & Securities Co. stock during the calendar year 1931 as follows: March 30, $7,140; May 29, $7,854; September 1, $7,854; and December 12, $8,568.

During the summer of 1933 a revenue agent investigated the records of the Brady Realty & Securities Co. During the course of the investigation the agent inquired of the assistant secretary of petitioner, one John Cox, whether he had filed a return for the petitioner, to which Cox answered, "No." The investigating agent prepared and filed a return for petitioner on August 7, 1933, pursuant to section 3176 of the Revised Statutes. On November 13, 1933, the Commissioner mailed to petitioner a preliminary audit letter proposing a deficiency in tax. Thereafter, on December 7, 1933, petitioner filed with the collector of internal revenue for the second district of New York, a corporation income tax return on form 1120, signed by John Cox, assistant secretary, in which $131,376 was reported as dividends on stocks of domestic corporations and on line 19 of page 1 a similar amount was deducted as dividends. No net income was reported, nor were there any schedules or information of any description attached to the return.

John Cox, who signed and filed the return for petitioner, was not familiar with the requirements and the law of making returns for foreign corporations. It was his understanding that unless a foreign corporation had taxable income it was not required to file a return and that dividends were a returnable deduction of either foreign or domestic corporations and not taxable.

In determining the deficiency here in question the respondent disallowed the deductions claimed on line 19 of petitioner's return (dividends of corporations from schedule H) under section 233 of the Revenue Act of 1928,[1] on the ground that petitioner's return filed December 7, 1933, did not comply with the requirement of the statute and therefore did not entitle it to the deduction claimed.

The petitioner contends that, although its return was filed late, it has complied with the provisions of section 233 and is entitled to the deduction claimed. It further contends that the item of $99,960 received by it on January 7, 1931, was purchased by it and did not constitute income, being a return on a capital transaction.

Section 23 of the Revenue Act of 1928, provides among other things, that:

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(p) *Dividends received by corporations.—* \* \* \*

(1) from a domestic corporation, \* \* \*

\* \* \* \* \* \*

The deduction allowed by this subsection shall not be allowed in respect of dividends received from a corporation organized under the China Trade Act,

[1] SEC. 233. ALLOWANCE OF DEDUCTIONS AND CREDITS.

A foreign corporation shall receive the benefit of the deductions and credits allowed to it in this title only by filing or causing to be filed with the collector a true and accurate return of its total income received from all sources in the United States, in the manner prescribed in this title; including therein all the information which the Commissioner may deem necessary for the calculation of such deductions and credits.

1922, or from a corporation which under section 251 is taxable only on its gross income from sources within the United States by reason of its receiving a large percentage of its gross income from sources within a possession of the United States.

Section 235 of the Revenue Act of 1928 provides that in the case of a foreign corporation the return shall be made on or before the fifteenth day of the sixth month following the close of the fiscal or calendar year as the case might be.

Petitioner argues that the requirement of section 233 that the return shall be filed "in the manner prescribed in this title" does not include the element of time, and that the purpose of the section is administrative and not penal in character.

The Commissioner argues that under section 233 the filing of a timely return is a necessary prerequisite to any deductions and credits to which a foreign corporation may be entitled, but insists that regardless of the late filing of the return petitioner should be denied the benefits of the deduction claimed because it has failed to include in its return "all the information which the Commissioner may deem necessary for the calculation of such deductions and credits."

The Revenue Act of 1928 authorizes the Commissioner, with the approval of the Secretary of the Treasury, to prescribe and publish all needful rules and regulations, and under that authority the regulations provide that corporations must make returns of form 1120 prescribed by the Commissioner. This form is furnished the taxpayer for use in making up the return. Attached to and as a part of the return prescribed are certain instructions for the guidance of the taxpayer in making up the return.

An examination of the return filed by petitioner discloses that it did not include any information whatever concerning the deduction claimed except that it consisted of dividends in the amount of $131,376.

Section 233 provides that a foreign corporation is entitled to the deduction of dividends from domestic corporations "only by filing, or causing to be filed, * * * a true and accurate return of its total income received from all sources in the United States, including therein all the information which the Commissioner may deem necessary for the calculation of such deductions and credits." In corporation return form 1120 is "Schedule H—Dividends Deductible", in which the name of the corporation paying the dividend sought to be deducted is required, together with the amount received as dividends, for the information of the Commissioner. Evidently this information was deemed necessary by the Commissioner to enable him to determine upon investigation whether or not dividends from the corporation, for which deduction is claimed, are in fact deductible under section 23 (p), and make proper calculation of such deductions.

Schedule H refers the taxpayer to instruction 19, which is as follows:

19. *Dividends.*—Enter as Item 19 the dividends described in instruction 9 which were reported as income in Item 9.

Describe in Schedule H any dividends claimed as a deduction.

Instruction 9 provides as follows:

9. *Dividends.*—Enter as Item 9 the amount received as dividends (a) from a domestic corporation other than a corporation entitled to the benefits of section 251 of the Revenue Act of 1928 and other than a corporation organized under the China Trade Act, 1922, or (b) * * *.

Petitioner did not fill in schedule H, nor give the information there sought. Deductions are not a matter of right but of legislative grace and statutory grant, and the taxpayer must bring himself strictly within the provisions of the statute to be entitled to them. Petitioner here, we think, ignored the very purpose of section 233, which provides that the return shall include information deemed necessary by the Commissioner, and not having given such information, did not bring itself within the requirements of the statute and the deduction must be denied. To hold otherwise would render the entire provisions of the statute a nullity. This conclusion renders it unnecessary for us to decide the effect of the late filing of the return under section 233.

This brings us to the second issue, namely, should the item of $99,960 received by petitioner on or about January 7, 1931, be included in income as dividends from a domestic corporation. Under the facts before us we think this issue must be resolved in favor of the petitioner. December 30, 1930, the right to receive the dividend was assigned to petitioner by Ruth Brady Scott, the stockholder of record on September 2, 1930, in exchange for an "A" bond of the face value of $100,000. This bond was subsequently paid by petitioner at its face value. Cf. *Matchette* v. *Helvering*, 81 Fed. (2d) 73. Petitioner had no right to the dividend as a stockholder of Brady Realty & Securities Co., as it did not become the owner of the stock on which the dividend was declared until after Ruth Brady Scott's right to the dividend had become fixed, see Fletcher Cyclopedia Corporations, sec. 3700. All petitioner had was an assignment of the right to receive the $99,960—an asset in the form of an account receivable for which it had paid. The receipt of the money by petitioner was, as to it, return on a capital transaction and not payment of a dividend on stock owned by it.

The case of *Eugenia R. Jamison*, 28 B. T. A. 514, may appear to be in conflict with the conclusions here reached from the meager facts appearing in the report. An examination of the record in that case, however, discloses that the dividends in question were on preferred stock and the resolution of the board of directors author-

ized payment of the dividends as provided in the stock certificates, but fixed no other date upon which stockholders of record would be entitled to receive them. The certificates provided fixed semiannual dividend dates. There the vendee became owner of the stock prior to the date fixed on the stock certificates for dividend payment and petitioner as vendee was held taxable on the dividend when received.

Here petitioner as vendee became the owner of the stock subsequent to September 2, 1930, the time fixed in the declaration for payment of the $99,960 dividend to stockholders of record of that date.

Section 291 of the Revenue Act of 1928 provides that "In case of any failure to make and file a return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, 25 per centum of the tax shall be added to the tax, except that when a return is filed after such time and it is shown that the failure to file it was due to reasonable cause and not due to willful neglect no such addition shall be made to the tax."

No reasonable cause appearing why the return was not made and filed within the time prescribed by section 235, petitioner is liable for the penalty provided in section 291.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

ARUNDELL, dissenting: I disagree with the majority opinion in so far as it disallows the deduction of dividends of a domestic corporation. The effect of this disallowance is to tax as income an item which the statute intended to exempt. *London & Lancashire Insurance Co., Ltd.,* 34 B. T. A. 295, 298. This anomolous result is spelled out of the taxpayer's failure to comply with a formality—a formality not prescribed by statute, nor the regulations, nor the face of the return, but buried deep in the schedules on the back of the return and the numerous instructions accompanying it.

The fact here is that not only was a return filed, but two returns were made and filed. A return was made and filed in August 1933 by a deputy collector under section 3176 of the Revised Statutes, which contained on its face a report of dividends from domestic corporations. Schedule H was not filled out in that return. After receiving a 30-day notice from the Commissioner, the taxpayer in December 1933 prepared and filed a return showing income from "Dividends on Stock of Domestic Corporations", in a larger amount than reported by the deputy collector, and deducting an equivalent amount under the heading of "Dividends (From Schedule H)." Schedule H was not filled out in this return.

According to the majority, it is the omission to fill in schedule H in the return that prompts the disallowance of a deduction permitted by statute and results in the imposition of a tax on income which the statute did not intend to tax. The only information called for by schedule H that was not on the face of the return was the name of the corporation that paid the dividend. This information was furnished to the deputy collector and probably was given by the payor corporation on information returns.

The word "return" as used in the taxing statutes is not a technical word of art. *Florsheim Bros. Drygoods Co.* v. *United States*, 280 U. S. 453. We have held a "substantial compliance" with the provisions of law for the filing of returns is sufficient to put the statute of limitations in motion. See *Stetson & Ellison*, 11 B. T. A. 397; affd., 43 Fed. (2d) 553. In that case the statute itself required "a return stating specifically the items of * * * gross income and the deductions", and the regulations contained requirements for detailed figures in the case of consolidated returns. The details so called for were not given, but the totals only were set forth and the return was held to be sufficient. An administrative requirement of a second return where the law changed the credit allowable to a corporation does not need to be complied with where the first return gave sufficient data to permit the calculation of tax to be made. See *Zellerbach Paper Co.* v. *Helvering*, 293 U. S. 172, wherein it is said, "Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such (*Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245), and evinces an honest and genuine endeavor to satisfy the law."

The return filed in this case is said by the majority to be a nullity solely, as I read the report, because it omitted to fill in schedule H. That is the only charge laid at the taxpayer's door. In my opinion that charge can not stand in the face of the fact of the actual filing of a return which meets the requirements of a return as laid down in the cases cited.

VAN FOSSAN and MELLOTT agree with this dissent.