DEL MAR ADDITION, B. G. BARNES, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94804.   Promulgated October 31, 1939.

*George S. Atkinson, Esq.,* and *M. S. Carneiro, C. P. A.,* for the petitioner.

*Elmer L. Corbin, Esq.,* for the respondent.

OPINION.

ARNOLD: This petitioner was created to subdivide, improve, and sell a tract of land, and its creators adopted the trust mechanism as a medium for carrying on their enterprise and dividing their gains. Our question is whether the organization so created should be considered an association taxable as a corporation. The fundamental principles involved have been fully discussed in *Morrissey* v. *Commissioner*, 296 U. S. 344, and its companion cases; *Swanson* v. *Commissioner*, 296 U. S. 362; *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369; *Helvering* v. *Combs*, 296 U. S. 365. In each of these cases the agreement involved purported to create an ordinary trust, but in each instance the Court held that an organization having so many of the features of a corporation should be treated for tax purposes as an association taxable as a corporation.

The salient features of a trust, created and maintained as a medium for the carrying on of a business and sharing its gains, were fully set forth in the *Morrissey* opinion, *supra*, and may be briefly restated as follows: (1) Trustees, as a continuing body with provision for succession and holding title to property; (2) centralized management; (3) security from termination or interruption by death of owners of beneficial interest; (4) transfer of beneficial interest without affecting continuity of enterprise; and (5) limitation of personal liability to property embarked in the undertaking. If, as petitioner contends, its tax status turns upon how closely it resembles a corporation, its salient features should be compared with those above set forth to determine wherein petitioner's features are analogous to a corporation, and wherein there is a marked dissimilarity. If the comparison shows that corporate features preponderate it should be held to be an association and taxed as though it were a corporation. *N. B. Whitcomb Coca-Cola Syndicate*, 35 B. T. A. 1031; affd., 95 Fed. (2d) 596; *Bert* v. *Helvering*, 92 Fed. (2d) 491, affirming 34 B. T. A. 805.

An analysis of the trust instrument herein reveals that provision was definitely made for three of these features, namely; title was taken in the trustees as a continuing body with provision for succession; management and control were centralized in the trustees; and the enterprise was secured against termination or interruption through the death of owners of beneficial interests. While the instrument contains no provisions relative to the transfer of beneficial interests, the right existed and such interests were actually trans-

ferred by the participants by bill of sale, the usual method by which the transfer of title to personal property is declared and established, without affecting the continuity of the enterprise.

The failure to include a specific provision limiting the personal liability of the participants will not prevent the classification of this enterprise as an association, since it is resemblance, and not identity, with which we are concerned. The absence of such a limitation did not prevent the court in *Bert* v. *Helvering, supra,* from holding a syndicate to be an association, and its absence will not prevent a like classification here. The failure to include the provision in the present trust instrument may be partially explained by the belief of the participants that the enterprise would create no liabilities in excess of their original investments. B. G. Barnes testified that the matter of personal liability was discussed and "It was considered there might have been a personal liability, but they did not consider they were going into a business where any liability would be created." This indicates that the parties thought it unnecessary to limit their liability to the property embarked in the undertaking.

While the witness Barnes testified that no use was ever made of the instrument executed by the interested parties on August 4, 1930, it aids in interpreting the trust agreement of May 9, 1925, by more specifically declaring the intention of the interested parties under the generalities of that instrument. It clearly shows the parties intended by the May 9, 1925, agreement, a continuing business organization under representative management until the purposes of the trust were fully accomplished.

This petitioner has attempted to fortify its theory that it is preponderantly akin to a trust or partnership by stressing the absence of corporate forms and procedure, but we think this argument is answered by the Supreme Court's language in *Helvering* v. *Coleman-Gilbert Associates, supra,* wherein it stated:

The significant resemblance to the action of directors does not lie in the formalities of meetings or records but in the fact that, by virtue of the agreement for the conduct of the business of a joint enterprise, the parties have secured the centralized management of their undertaking through designated representatives.

Recent decisions of the Board have pointed out that *the purpose* for which a trust is created is probably the most important single factor to be determined where the question raised is that of a trust or an association, *Cleveland Trust Co., Trustee,* 39 B. T. A. 429, 435; and that it is the powers conferred by the trust instrument which determine the character of the trust, *Lee H. Marshall Heirs,* 39 B. T. A. 101, 110. See also *Williams Trust,* 39 B. T. A. 612, and the *Morrissey* and companion cases, *supra.* The purpose of the present trust was stated in the trust instrument to be a "desire to subdivide and sell"

the property acquired. The trustee, B. G. Barnes, testified that this was the purpose, and in furtherance of that purpose the property was improved, houses were built and sold, an office force was maintained, and all the land acquired was sold to the public in the ordinary course of business. Both the provisions of the trust agreement and the activities conducted thereunder convince us that this was a so-called "business trust", Bogert, Trusts and Trustees, vol. 2, p. 971 *et seq.*, which was created as a convenient method for dealing in real estate, developing the acreage, improving it, and selling the property to the public. It was definitely an organization for profit, the profits were still coming in during the taxable year, and the trust should, in our opinion, be classified as an association taxable as a corporation.

We find no conflict in our decision here with the Supreme Court's decision in *Lewis & Co.* v. *Commissioner*, 301 U. S. 385, or with our decision in *Gibbs-Preyer Trust #1*, 39 B. T. A. 492. Upon an examination of *Commissioner* v. *Gerstle*, 95 Fed. (2d) 587, affirming 33 B. T. A. 830, we think that case is distinguishable on its facts. While each proceeding must stand upon its own particular facts we find support for our conclusion in the decisions of the courts in *Thrash Lease Trust* v. *Commissioner*, 99 Fed. (2d) 925, affirming 36 B. T. A. 444; certiorari denied, 306 U. S. 654; *Wellston Hills Syndicate Fund* v. *Commissioner*, 101 Fed. (2d) 924, affirming 36 B. T. A. 575; and *Kilgallon* v. *Commissioner* (C. C. A., 7th Cir.), 96 Fed. (2d) 337; certiorari denied, 305 U. S. 622.

Petitioner's first alternative contention is that sections 105 and 106 of the Revenue Act of 1935, as amended by sections 401 and 402 of the Revenue Act of 1936, are unconstitutional because they are arbitrary and capricious and are violative of the due process clause of the Fifth Amendment to the Constitution. The respondent asserts that it is unnecessary for the Board to pass upon the constitutionality of section 105, since the deficiency relates to excess profits taxes and no deficiency has been asserted with respect to the capital stock tax.

Section 105, as amended, provides for an excise tax of one dollar per $1,000 upon the "adjusted declared value" of petitioner's capital stock. Section 106, as amended, imposes an excess profits tax upon each income tax taxable year ending after the close of the first year in respect of which petitioner is taxable under section 105. The rates of tax prescribed are 6 percent on that portion of the net income in excess of 10 percent and not in excess of 15 percent of the "adjusted declared value" of petitioner's capital stock as fixed and determined under section 105, and 12 percent on the net income in excess of 15 percent of the adjusted declared value.

The constitutionality of section 105 of the Revenue Act of 1935 has been considered and decided adversely to petitioner's contention

in *Allied Agents, Inc.* v. *United States*, 26 Fed. Supp. 98. In considering the question the court found it necessary to examine the relationship that existed between the capital stock and the excess profits taxes provided for in sections 105 and 106, respectively, of the 1935 Act and like provisions appearing in the National Industrial Recovery Act and the Revenue Act of 1934, sections 215 and 216 of the National Industrial Recovery Act, and sections 701 and 702 of the Revenue Act of 1934. In its discussion of the constitutional question the court held that "the two taxes are inseparable and must be considered together", and this petitioner has recognized the inseparability of the two taxes by alleging the unconstitutionality of both taxes in order to reach the one in which it is interested.

In our opinion the reasoning of the court in *Allied Agents, Inc.*, *supra*, is dispositive of petitioner's contention. Furthermore, in *A. J. Crowhurst & Sons, Inc.*, 38 B.T.A. 1072, and *W. & K. Holding Corporation*, 38 B.T.A. 830, 844, the Board has upheld the constitutionality of sections 215 and 216 of the National Industrial Recovery Act, the provisions of which are substantially identical to the sections here involved. See also *Chicago Telephone Supply Co.* v. *United States* (Ct. Cls.), 23 Fed. Supp. 471; certiorari denied, 305 U.S. 628, which discusses the constitutionality of sections 701 and 702 of the Revenue Act of 1934.

Petitioner cites and relies upon *Oertel Co.* v. *Glenn*, 13 Fed. Supp. 651; affd., *Glenn* v. *Oertel Co.* (C. C. A., 6th Cir.), 97 Fed. (2d) 495. That case related to the right of the taxpayer to file an amended capital stock tax return and correct the alleged mistake of fact under sections 215 and 216 of the National Industrial Recovery Act, 48 Stat. 195, 207, and 208. The District Court discussed the constitutional question, but turned its decision upon the fact that there had been no proper determination of value. The Circuit Court ignored the constitutional question but affirmed the taxpayer's right to file an amended return where *the return was filed within the period as extended*. We can see no reason for holding that these decisions invalidate the sections in question, or that they are authority for a determination that sections 105 and 106, as amended, are unconstitutional.

The second alternative issue is whether petitioner's delinquent filing of its 1936 capital stock tax return will satisfy the statutory requirements. The capital stock tax return filed by petitioner on January 12, 1939, was due during the month of July 1936. The return was filed in 1939 after the case was at issue and five days before the hearing, for the sole and only purpose of obtaining the benefit of an exemption for excess profits tax purposes should it be held that petitioner was liable to tax as an association. In this return

petitioner fixed the adjusted declared value of its capital stock at $250,000, which would prevent the imposition of an excess profits tax, since 10 percent of the declared value of its capital stock is in excess of petitioner's taxable net income.

In determining the excess profits tax deficiency respondent reduced the petitioner's net income by the amount of its income tax liability and taxed the remainder at the rate of 12 percent upon the theory that, no declaration of value of the capital stock having been made, the applicable rate was 12 percent. Sec. 106, as amended. The respondent contends that, since petitioner did not file a capital stock tax return as required by the statute, it is not entitled to a "credit" of 10 percent of the value declared on January 12, 1939, in computing its excess profits tax liability.

The statutory requirements for filing the capital stock tax return are specific. Section 105 (d) of the Revenue Act of 1935 provides that "Every corporation liable for tax under this section shall make a return under oath within one month after the close of the year with respect to which such tax is imposed. * * *." The section further provides that "The tax shall, without assessment by the Commissioner or notice from the collector, be due and payable to the collector before the expiration of the period for filing the return."

Under the foregoing provisions, petitioner's filing of the capital stock tax return on January 12, 1939, for the year 1936 was not a timely return, as it should have been filed on or before July 31, 1936. The only exception to the statutory rule is where the time for filing has been extended and there is no evidence here that any such extension was granted.

The petitioner, however, relies upon that portion of section 105 (f) which provides that "For the first year ending June 30 in respect of which" a capital stock tax is imposed "the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended)," and contends that the capital stock tax return filed on January 12, 1939, was its "first return" under section 105, as amended.

The first return under the 1936 Act, as amended, is important because of the inseparability of the capital stock tax and the excess profits tax. In *Allied Agents, Inc., supra*, the court explained the reason for and nature of the two taxes as follows:

* * * The main purpose of the new plan for levying these two taxes was to do away with the difficult and innumerable controversies in determining the actual value of invested capital or capital stock; let the taxpayer make a declaration of the value of the capital stock; and then apply an excess-profits tax framed in such a way that there would be an inducement to the taxpayer to place a fair and reasonable value on the stock and if it did not, would so increase the excess-profits tax that little or nothing would be gained by putting

an unreasonably low value thereon. This plan made the taxes self-adjusting and, as before stated, Congress had the right to prescribe the basis for the two taxes. It prescribed the declared value as this basis.  *  *  *  Moreover, except in very unusual situations such as no statute can guard against, the taxpayer cannot control the taxes that it will pay under the two statutes under consideration by its statement as to the declared value. These statutes are so framed that the higher the declared value of the capital stock the lower will be the excess-profits tax, and the lower the declared value the higher will be the excess-profits tax. In this way when the two taxes are considered together, as they should be, they are as stated above self-adjusting both as to the taxpayer itself and in comparison with what is paid by others under them.

If this petitioner should be permitted to file a return more than two years after it was due and, with full knowledge of its taxable net income, declare a value for its capital stock which would wipe out its excess profits tax liability, the primary purpose of the Congress in enacting the two taxes would be defeated. Petitioner urges that to impose the excess profits tax now would result in an undue hardship, but it must be remembered that from 1925 to the taxable year this petitioner has had benefits to which it was not entitled under the law, as it should have been treated as a corporation for those years.

The *Oertel* case, *supra*, and *Philadelphia Brewing Co.* v. *United States* (Ct. Cls.), 27 Fed. Supp. 583, held that an amended capital stock tax return could be filed *within the period for filing such returns as extended*. These decisions do not hold that a taxpayer may file a return more than two years after it is due. The weight of authority, however, is opposed to *any* filing of an amended return, whether timely or otherwise, as shown by the decisions in *Haggar Co.* v. *Commissioner* (C. C. A., 5th Cir.), 104 Fed. (2d) 24, affirming 38 B. T. A. 141; *Blake & Kendall Co.* v. *Commissioner* (C. C. A., 1st Cir.), 104 Fed. (2d) 679; and *Jacob Froehlich Cabinet Works* v. *United States* (U. S. Dist. Ct.), 28 Fed. Supp. 882.

The Board's recent decision in *Flomot Gin Co.*, 40 B. T. A. 689, is distinguishable. In that case the taxpayer was permitted to file a return out of time because a return filed timely was deemed to be incomplete and not in "substantial compliance" with the statute. No such facts obtain here. In its brief the taxpayer states that "This return was filed for the sole and only purpose of, *in the alternative*, getting the benefit of the credit for excess profits tax purposes, if it should be held that petitioners are liable as an association." The deliberate filing of such a return for the purposes stated is not the return required by section 105 (f) and its filing and acceptance by the Commissioner is ineffective to secure the credit granted by sections 105 and 106, as amended, and will not relieve this taxpayer from its excess profits tax liability. Cf. *Taylor Securities, Inc.*, 40 B. T. A. 696; *Gladstone Co., Ltd.*, 35 B. T. A. 764.

In view of the foregoing discussion we hold that petitioner is an association taxable as a corporation, that sections 105 and 106 of the Revenue Act of 1935, as amended, are not unconstitutional, and that petitioner is subject to excess profits tax liability.

Reviewed by the Board.

*Decision will be entered for the respondent.*

TURNER, dissenting: Under the common plan of the various revenue acts, each particular tax or group of taxes, such as excise taxes, is imposed under a separate title. The statutory provisions, substantive or administrative, peculiar to a particular tax are regularly included in the title imposing the tax. Beginning with the Revenue Act of 1918, each of the revenue acts has concluded with a title or titles under some such heading as "General Administrative Provisions" or "General Provisions," which provisions have been made applicable to all taxes imposed by the act in so far as they were not inconsistent with or contrary to the specific or peculiar provisions of the various tax-imposing titles. The period to be covered by the return and the time within which a return may be filed is regularly fixed by the provisions of the title wherein the tax is imposed and no instance comes to mind where any such title has ever contained words or provisions to indicate that the filing of delinquent returns was contemplated. Regardless of that fact, however, section 3176 of the Revised Statutes, as amended, has been extended and applied to all of the revenue acts as part of the "General Administrative Provisions" or "General Provisions" either by specific reenactment or by reference. The last revenue act to specifically amend or reenact section 3176 was the Revenue Act of 1926, and so much of that section as is pertinent to the discussion here reads as follows:

SEC. 3176. If any person, corporation, company, or association fails to make and file a return or list at the time prescribed by law or by regulation made under authority of law, or makes, willfully or otherwise, a false or fraudulent return or list, the collector or deputy collector shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise. In any such case the Commissioner of Internal Revenue may, from his own knowledge and from such information as he can obtain through testimony or otherwise, make a return or amend any return made by a collector or deputy collector. Any return or list so made and subscribed by the Commissioner, or by a collector or deputy collector and approved by the Commissioner, shall be prima facie good and sufficient for all legal purposes.

\* \* \* \* \* \* \*

The Commissioner of Internal Revenue shall determine and assess all taxes, other than stamp taxes, as to which returns or lists are so made under the provisions of this section. In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner of Internal Revenue or the collector in pursuance of law, the Commissioner shall

add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax. * * *

* * * * * * *

In the instant case the question is whether or not the petitioner had the right or could under the statute file an effective capital stock tax return after the time prescribed by statute. Section 105 (d) of the Revenue Act of 1935 provides that "every corporation liable for tax under this section shall make a return under oath within one month after the close of the year with respect to which such tax is imposed" but contains no provision for the filing of delinquent returns. It continues as follows: "All provisions of law (including penalties) applicable in respect of the taxes imposed by section 600 of the Revenue Act of 1926 shall, insofar as not inconsistent with this section, be applicable in respect of the taxes imposed by this section." Section 600 of the Revenue Act of 1926 levies an excise tax upon the sale or lease by the manufacturer of certain specified articles. Monthly returns are required and, consistent with the general plan of the revenue acts, section 600 contains no provision for the filing of delinquent returns. Section 1100 of the Revenue Act of 1926, the first section of Title XI—General Administrative Provisions—provides, however, that "All administrative, special, or stamp provisions of law, including the law relating to the assessment of taxes, so far as applicable, are hereby extended to and made a part of this Act." Section 1103 of that title reenacts the provisions of section 3176 of the Revised Statutes, part of which has been quoted above, and from the provision quoted it appears that the filing of delinquent returns not only is anticipated but is required, even though it may be necessary for a collector, a deputy collector, or the Commissioner of Internal Revenue himself to make such returns. I am unable to find anything in the statute to indicate that any exception was made or intended with respect to capital stock tax returns.

The reasoning advanced in the majority opinion is that the purpose of Congress in imposing the excess profits tax would be defeated if delinquent capital stock tax returns were permitted, since a taxpayer filing a delinquent capital stock tax return could declare a value for its capital stock which would wipe out any liability for excess profits tax. While such a case may be possible, the Commissioner at all times has the power to prevent it. Where a taxpayer fails to make and file a return or list at the time prescribed by law, the collector or a deputy collector is directed by the statute to make a return for such taxpayer, or the Commissioner himself may make the return, and the statute further provides that any return so made "shall be prima facie good and sufficient for all legal purposes." A return so made

would, in my opinion, constitute the taxpayer's first return within the meaning of section 105 (f) and the taxpayer would be bound by the value therein declared for his capital stock, and his return subsequently filed would be ineffective to change the value so established. If, however, the collector, his deputy, or the Commissioner fails to act, it is my view that the statute not only permits but anticipates the filing of a delinquent return by the taxpayer, subject to the penalty prescribed.

For the reasons stated above, I respectfully note my dissent.

ARUNDELL, SMITH, and LEECH agree with this dissent.