Western New York Farms Syndicate, George H. Putnam, Trustee v. Commissioner.
Western New York Farms Syndicate v. Commissioner
Docket No. 9697.
United States Tax Court
1947 Tax Ct. Memo LEXIS 247; 6 T.C.M. (CCH) 398; T.C.M. (RIA) 47098; April 17, 1947
*247 John M. Reed, Esq., 2122 Farmers Bank Bldg., Pittsburgh 22, Pa., for the petitioner. Stanley W. Herzfeld, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined deficiencies as follows: Excess
Year
Income Tax
Profits Tax
1940
$ 5,597.65
$ 395.40
1941
13,878.29
12,730.21
1942
6,805.02
32,153.81
1943
6,805.02
23,531.25 He also determined deficiencies in declared value excess-profits tax but the parties stipulated that there are no deficiencies in that tax. The only issue for decision is whether the Commissioner erred in holding that the petitioner was an association within the provisions of section 3797 (a) (3), I.R.C., and, as such, taxable as a corporation. The facts are found as stipulated by the parties. [The Facts] A corporation was formed in 1911 for the purpose of clearing, draining and farming a large tract of swamp land in the western part of the state of New York. Its successor still owned about 10,000 acres of the land in 1927, together with some accounts receivable, contracts receivable on sales of land, some bonds and mortgages, buildings and *248 cottages, machinery and equipment, live stock and a few other small items. Ditches and roads had been constructed on the land. The successor corporation agreed in writing on August 2, 1927 to sell all of its assets to Benjamin B. Putnam of Ohio and he agreed to pay $500,000 for them. Benjamin assigned this agreement to his brother Samuel H. Putnam of Pittsburgh who had been negotiating for the purchase for some time. The assets included items having a value of $100,000 which were readily convertible into cash but it was necessary to raise $400,000 of the purchase price. The Putnams, in order to obtain that money, entered into a "syndicate agreement" with twenty-two other persons under which the twenty-four parties subscribed the $400,000. The assets, other than cash, were transferred to Benjamin, in August 1927, who held them for the benefit of the parties to the agreement which was dated October 10, 1927. Benjamin was named "syndicate trustee" with power to hold title to the assets and to turn them into cash or securities by sale, collection, or other means upon terms and at times as he deemed best, to pay taxes and expenses of upkeep, protection and liquidation of the properties, *249 and to repay with interest the amounts subscribed, after which the balance was to be divided, one-half to the subscribers and one-half to Samuel and the trustee as their compensation. A majority in interest could elect a successor trustee if necessary. The Putnams were large subscribers and thus shared in two ways. Prorata distributions were to be made whenever as much as $10,000 had accumulated. Participation certificates were issued. No provision was made for the transfer of the certificates but they were transferred from time to time. The Putnams were to promote the sale and liquidation of the assets. They were to be reimbursed for their expenses. A majority in interest of the subscribers could force a sale at auction of the remaining assets after they had been paid the amount of their subscriptions with interest. The subscribers had owned no previous interest in the assets. Title to the properties was later conveyed to persons other than Benjamin for convenience. The drained or muck land was particularly suitable, after being cleared and drained, for truck gardening in 10 to 15 acre plots. The "syndicate" did not farm or improve the property except to construct and *250 maintain drainage ditches and roads. Uncleared land was leased on clearing contracts for terms of from 3 to 5 years. Cleared land was sold on 3 to 8 year installment contracts and deeds were given by the record title holders. The "syndicate agreement" was not recorded or mentioned in the deeds. The "syndicate" never acquired any other property. It sold about 2,187 acres during the taxable years and rented about 1,700. A small office was maintained on the property. One person was employed at a salary of $300about per month. He supervised the property, employed labor to construct and maintain ditches and roads, contacted prospective customers, received rents, purchase money, and interest, prepared leases and deeds, and accounted semi-monthly to the trustee, who lived in Ohio. His reports were filed by the trustee. He remitted to the trustee and the latter made distributions as accumulations in the hands of the employee warranted. Prices were fixed by consultation between the employee and the Putnams. No other salaries or commissions were paid. Benjamin died in December 1944 and since then another certificate holder has been acting as trustee with the consent of a majority in interest *251 of the certificate holders but without being formally elected. No formal meetings were held. There are no by-laws, minutes, or seals. The syndicate had no official name. It had no bank account. The subscriptions were repaid in full with interest prior to October 31, 1937. The income received from 1927 through 1943 consisted of $197,889.87 interest, $323,616.90 net rents, $646,253.10 land sales, and $10,177.32 from sales of lumber and surplus products, and from rental of equipment to tenants. Disbursements made during that period were $109,491.98 for interest, $106,310.26 for taxes, $400,000 repaying subscriptions, $255,693.60 distribution of profits, and $273,039.87 for payrolls, supplies, and other expenses. The general principles for deciding whether an activity is an association or a partnership for tax purposes are well settled. The difficulty is to determine in a given case whether the activity has sufficient similarity to a corporation to be taxed as such or whether its resemblance to a corporation is so remote that the participants are more properly taxable as individuals. Two cases are seldom if ever exactly alike. Nevertheless, there is no material difference between *252 this case and Del Mar Addition, 40 B.T.A. 833, affirmed on this point 113 Fed. (2d) 410. The agreement therein was described as a "trust" while here it is called a "syndicate" but essentially they do not differ. There some houses were built on the land to help sell it, while here clearing leases were resorted to. These differences do not distinguish the cases. The "syndicate" has been actively engaged for many years in the profitable business of disposing of a large tract of land through sales. It has made money from rents and interest. It had many members, centralized management, sufficient permanence for all purposes, transferable units of ownership, and, so far as appears, limited liability of owners. The Commissioner did not err in taxing it as a corporation. Decision will be entered under Rule 50.