ROTORITE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88606. Promulgated December 27, 1939.

*Raymond H. Schultz, Esq.,* and *Victor J. Voorheis, Esq.,* for the petitioner.

*D. A. Taylor, Esq.,* for the respondent.

1308

## OPINION.

TURNER: The respondent now concedes that the payments made after June 13, 1935, amounting to $14,759.74, should not be treated as royalties. His position is that the letter of June 13, 1935, constituted notice by the Sunbeam Co. of the exercise of its right under the contract between the parties to become the purchaser of the patents, that the payments made prior to that date were royalties and the payments thereafter made constituted the selling price of the patents. The petitioner, on the other hand, still contends that all of the payments received in 1935, amounting to $80,556.81, must be treated for income tax purposes as the selling price of the patents and no part of such payments may be treated as royalties.

Both parties agree that under the contract the selling price of the patents was not a fixed amount but was the maximum amount agreed to, reduced by such amounts paid under the contract as properly may be regarded as the payment of royalties. The petitioner agrees that the payments made in 1933 and 1934 were royalty payments and that they are not affected by the subsequent exercise by the Sunbeam Co. of its right to purchase the patents. With respect to 1935, however, it is claimed that inasmuch as Sunbeam did exercise its right to purchase the patents in that year, all payments made in 1935, including the payments made prior to the exercise of the right to purchase, became a part of the purchase price. In support of this proposition, petitioner relies on *Indian Creek Coal & Coke Co.*, 23 B. T. A. 950, and in further support thereof cites, among others, *Albert W. Russell*, 35 B. T. A. 602; *Guy Fulton*, 11 B. T. A. 641; *H. B. Hill*, 3 B. T. A. 761; *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359; and *Huntington-Redondo Co.*, 36 B. T. A. 116.

In *Indian Creek Coal & Coke Co.*, *supra*, the taxpayer had reported all payments made during the year in which the option was exercised as the selling price of the property. The respondent increased the selling price by the amount of royalty payments made in preceding years but made no change with respect to the treatment of the payments made in the year in which the option was exercised. Accordingly there was no issue before us as to the character of the payments made in the year the option was exercised, and that case does not support the claim of the petitioner in the instant case. To the extent that the payments were in issue, however, we decided that they were royalty payments and not a part of the selling price of the property. It is thus apparent that *Indian Creek Coal & Coke Co.* gives support to the claim of the respondent rather than the petitioner.

In *Albert W. Russell*, *supra*, *Guy Fulton*, *supra*, and *H. B. Hill*, *supra*, there was an adjustment of salaries of the taxpayers prior to the close of the taxable year, the taxpayers refunding to their employers a portion of the amounts previously received by them during the taxable year as salaries. It was held that the salary income of the taxpayers was the net amount received during the year. As the respondent points out in his brief, those cases make no determination as to the nature of income; they merely have to do with the amount of income received. Here the amount of the payments received is not in dispute. Those cases are not in point.

Under the contract between the Sunbeam Co. and the petitioner, the Sunbeam Co. had the right to use the patents belonging to the petitioner upon the payment of a specified royalty. It had a further right to become a purchaser through the exercise of an option, the

price to be paid to be determined by subtracting the amount of the royalties previously paid from a maximum purchase price specified in the contract. The nature of the payments in the instant case was fixed by the parties themselves and so long as the patents belonged to the petitioner and there was no exercise on the part of the Sunbeam Co. of its right under the contract to purchase and acquire them as its own, the payments were royalties. *Huntington-Redondo Co.*, *supra*, is clearly not in point. There the parties, prior to the close of the taxable year in which the payments in question were made, contracted specifically as to the allocation of the said payments between principal and interest, while in this case there was no subsequent contract and the nature of the payments remains as fixed and determined by the terms of the contract existing when they were made. Neither is the situation here affected by the rule laid down by the Supreme Court in *Burnet* v. *Sanford & Brooks Co.*, *supra*. In that case the Court decided only that certain items of gross income were to be reported as such for the taxable year in which received. The character of the items as gross income was not in dispute. Here the situation is exactly the reverse. The question is not as to the period for reporting income but rather the character or nature of payments received.

On first impression this case seems to have some resemblance to *Virginia Iron Coal & Coke Co.*, 37 B. T. A. 195; affd., 99 Fed. (2d) 919. In that case the taxpayer, in years prior to the taxable year, had received certain amounts of money under an option to purchase certain of its property, which payments were to be applied upon the purchase price in case the option should be exercised. In the taxable year the option was surrendered without purchase, and it was held that the payments in question were income in the year of surrender. In reaching our conclusion, however, we specifically distinguished cases involving the question presented in the instant case, as follows:

* * * Cases involving royalties are distinguishable. Royalties have been held to be income at the time received where they represent a payment for the right to remove or use some of the property even though they are to be applied against the purchase price. The owner, of course, offsets this income by depreciation and depletion deductions which permit him to recover his basis tax-free despite the fact that the entire amount of the royalties is included in income. Here the payments were not of that character. * * *

In connection with the above quotation, see *Edward E. Haverstick*, 13 B. T. A. 837, and *Indian Creek Coal & Coke Co.*, *supra*.

The petitioner seeks to avoid the conclusion that by reason of the letter from the Sunbeam Co. on June 13, 1935, the contract between the parties became a contract of sale and purchase by pointing to

the language contained in the letter. It stresses particularly the first paragraph, reading as follows:

This is to advise you that we wish to exercise our option to purchase the Rotorite Patents upon completion of the stipulated royalty payment. We expect that this will pay out in the June shipments, although orders have been slumping off a bit and it is possible that we might not be able to pay out before July.

While the message thereby conveyed was not couched in words as definite as it might have been, there is no doubt in our minds that it was intended as the notice provided for in the contract between the petitioner and Sunbeam; nor is there any doubt in our minds that the petitioner accepted it as such. Furthermore, the fact that the Sunbeam Co., in keeping with its consistent practice of writing down patents to the amount of $1, entered on its books all of the payments with the exception of $1 as the payment of royalties is no more controlling than the entries made on the petitioner's books designating payments received prior to April 30, 1935, as royalties and those received after that date as the selling price of the patents. The contract between the parties, and not such book entries, is controlling. It is accordingly held that the payments received up to June 13, 1935, represented royalties and the payments received thereafter constituted the selling price of the patents.

It is obvious, and there appears to be no contention to the contrary, that the patents were capital assets and the respondent is sustained in his claim that the deduction in respect of the loss sustained is limited to $2,000 by the provisions of section 117 (d), *supra.* The petitioner is entitled, however, to depreciation on the patents up to the date of sale.

Our next question is whether the petitioner is subject to surtax as a personal holding company imposed by section 351, *supra,* and further, whether it is liable to a 25 percent penalty for failure to file a personal holding company tax return. A personal holding company is defined in section 351 (b) (1) as any corporation if "at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and * * * gains from the sale of stock or securities * * *." The facts show that from and after June 30, 1934, the only activities of petitioner were the receiving of the payments from the Sunbeam Co. under the contract and the distributing of the amounts so received to its preferred stockholders. We have just held that the payments received by the petitioner from the Sunbeam Co. from January 1 to June 13, 1935, were royalties. It is thus apparent that substantially all, if not all, of the income of the petitioner during the taxable year was royalties and the petitioner falls within the definition of a personal holding company within the meaning of section 351 (b) (1), *supra.*

The petitioner contends, however, that even though the payments received in 1935 were in the nature of royalties, it had no undistributed adjusted net income within the meaning of section 351, *supra*, and is not therefore liable to the tax imposed by that section. In support of this contention it points to the distributions made during the year to its preferred stockholders, claiming that the said distributions were "dividends paid during the taxable year" within the meaning of section 351 (b) (2) (C). According to the facts the petitioner was in process of liquidation. In December preceding it had taken steps to reduce the call price for its preferred stock from $110 to $85 per share. This act became effective on January 8, 1935, when the Secretary of State of Illinois issued a certificate so amending its articles of incorporation. During 1935, the taxable year, the petitioner made distributions to the holders of preferred stock amounting to $85 per share and the preferred stock certificates were delivered to petitioner and canceled. After such distributions petitioner had on hand cash in the amount of $8,772.48; it had no other assets. This amount was withheld from its stockholders to enable it to meet taxes and expenses of final liquidation. There is no showing that it was retained to retire indebtedness incurred prior to January 1, 1934. The petitioner, pointing to the language of section 351 of the Revenue Act of 1936 and section 27 (f) of that act dealing with the corporation credit for dividends paid, contends that such part of the distribution made to the preferred stockholders as is properly chargeable to earnings or profits is to be treated as dividends paid within the meaning of section 351 (b) (2) (C), *supra*. This interpretation of the term "dividends paid during the taxable year" rests not upon the provisions of the Revenue Act of 1934, but upon the provisions of the Revenue Act of 1936; the Revenue Act of 1934 contained no such provision. We have previously considered the question as to whether or not the term "dividends paid during the taxable year" as that term is used in the Revenue Act of 1934 included distributions in liquidation and reached a conclusion contrary to the contention of the petitioner here. *Gaston & Co.*, 39 B. T. A. 640. We find nothing in the arguments advanced by the petitioner to indicate that the term was misconstrued. Cf. *Foley Securities Corporation*, 38 B. T. A. 1036; affd., 106 Fed. (2d) 731.

With respect to the penalty for failure to file a personal holding company return, the petitioner argues that all requirements in that respect were met when the petitioner filed its corporate income tax return. The question here presented was considered by the Board and decided contrary to the views of the petitioner in *Collateral Mortgage & Investment Co.*, 37 B. T. A. 630, and we find nothing in the arguments advanced which has not been considered and decided.

It is accordingly held that, inasmuch as no personal holding company return was filed, the imposition of the penalty in respect thereto is mandatory.

With respect to the liability of petitioner for excess profits taxes under section 702 of the Revenue Act of 1934, the record shows that after June 30, 1934, its activities consisted of receiving the payments from the Sunbeam Co. and distributing them to its stockholders. It engaged in no other activities. Such activities do not constitute carrying on or doing business within the meaning of the act so as to make it subject to the capital stock tax, *Ambergris Consolidated Mining Co.* v. *United States*, 27 Fed. Supp. 968; *Kingkade Hotel Co.* v. *Jones,* —— Fed. Supp. —— (U. S. Dist. Ct., W. Dist. of Okla., June 26, 1939) ; and *Lyon Lumber Co.* v. *Harrison,* —— Fed. Supp. —— (U. S. Dist. Ct., N. Dist. of Ill., June 15, 1939), and since it is not subject to the capital stock tax, it is not subject to the excess profits tax. *Colson Co.*, 37 B. T. A. 1031.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK, dissenting: The agreement between the petitioner and Sunbeam gave to Sunbeam an option to purchase the patents for the sum of $135,000, and further provided that if Sunbeam exercised its option to purchase, all royalties therefore paid should be credited upon the purchase price. Those provisions gave to the payments a dual character. They might be royalty payments for the use of the patents or payments of the purchase price for the patents, depending upon whether or not Sunbeam exercised its option to purchase. It may have been necessary to treat them as royalties in prior years in order to permit the orderly collection of income taxes upon an annual basis. The petitioner did not know in those years whether or not the option would be exercised. But the inherent uncertainty of character which attached to the payments was removed in the taxable year when Sunbeam exercised its option to purchase the patents. Cf. *Virginia Iron Coal & Coke Co.*, cited in the majority opinion. It then became clear for the first time that the payments were payments of purchase price. The character of the payments made in 1935 did not have to be determined for income tax purposes prior to the date the option was exercised, and there is no reason why all of the payments made during that year should not be recognized for income tax purposes as payments of the purchase price, which, in fact, they finally turned out to be. Thus, the petitioner is not subject to any tax or penalty as a holding company.

Although the Commissioner here refuses to recognize these payments as a part of the purchase price of the assets, he has insisted, in the case of Sunbeam, that they were a part of the purchase price and not deductible by Sunbeam as royalties. He thus recognizes the dual character of the payments for his own double and inconsistent advantage.

I can not believe that Congress ever intended a personal holding company tax and penalty for failure to file a return to apply in a situation like that presented here and, therefore, the result reached by the majority seems particularly unfortunate.

ARUNDELL, VAN FOSSAN, MELLOTT, KERN, and OPPER agree with this dissent.