## BLENHEIM CO., Ltd., v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4830.

Circuit Court of Appeals, Fourth Circuit.

Feb. 25, 1942.

1. Net income (as defined in Title I of the Revenue Act of 1934)..........$( 1,445.37)
2. Dividends on stock of domestic corporations subject to taxation under Title I of the Revenue Act of 1934 (from Schedule A)... 11,626.12

3. Total of Items 1 and 2.. $ 10,180.75.
 Less:
6. Losses from sale or exchange of capital assets (disallowed by section 117(d) of the Revenue Act of 1934).... $ 144,594.24

8. Total of Items 4 to 7.... $ 144,594.24
9. Adjusted Net Income (Item 3 minus Item 8) $(134,413.49)

Thereafter, the Commissioner sent numerous letters to the petitioner and to its representatives both in the United States and in Canada, requesting that a normal income tax return (Form 1120) be prepared and filed, from which the total net income figure of $1,445.37 reported in the surtax return could be independently computed by the Commissioner. Harold P. Cornell was the petitioner's secretary resident in the United States. It was his duty to prepare and file Federal income tax returns on petitioner's behalf, and he did prepare and filed the above mentioned Form 1120H. However, he believed that no normal tax return on Form 1120 was required under the Internal Revenue Laws, because he thought Form 1120H contained all the information which would have been set forth on Form 1120, and because he also thought that the return on Form 1120 would show that petitioner did not have any net income subject to tax for the calendar year 1934.

For these reasons, Cornell did not file a timely return on Form 1120. However, it is not without note that Cornell had prepared other returns for domestic corporate taxpayers on Form 1120 for 1934, even though he had not prepared any such returns for a foreign corporation for that year. Moreover, he had prepared Form 1120 returns for foreign and domestic corporations for years prior to 1934, including returns for the petitioner.

After having received no response whatever to his numerous letters, the Commis-

Richard H. Wilmer, of New York City (Joseph C. White and Thomas F. Boyle, both of New York City, on the brief), for petitioner.

Hubert L. Will, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge:

This is a petition for the review of a decision of the United States Board of Tax Appeals determining a deficiency in petitioner's income tax liability for the calendar year 1934 in the sum of $1,691.77, and a penalty in the sum of $422.94. The decision of the Board is reported in 1940, 42 B.T.A. 1248.

Petitioner is a foreign corporation organized under the laws of the Colony of Newfoundland. On June 15, 1935, it filed a personal holding company surtax return on Form 1120H, for the calendar year 1934, with the Commissioner of Internal Revenue, at Baltimore, Maryland. This return showed the following items:

sioner of Internal Revenue, on April 28, 1938, prepared a normal tax return on Form 1120 for the petitioner. This was done pursuant to the authority granted in section 3176 of the Revised Statutes, as amended 26 U.S.C.A. Int.Rev.Code § 3612. The return showed gross income of $11,626.12, consisting of dividends on stock of domestic corporations subject to taxation under Title I of the Internal Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 664 et seq., no deductions, net income of $11,626.12, and a tax due of $1,598.59. A notice of this deficiency was duly mailed to petitioner on May 18, 1938.

The petitioner prepared and filed a normal tax return on Form 1120 for 1934 on August 9, 1938, at which time it did not know that the Commissioner had filed a return for it under § 3176 of the Revised Statutes. We pause to note that the return was filed *four* years after the date on which the return was due. In any event, the return was filled out in full in the usual fashion and showed a deficiency in income of $1,445.37, and no tax due. The attached schedules contained breakdowns of dividends and interest, petitioner's securities transactions, and other detailed information.

The items of gross income received by petitioner from sources within the United States were as follows: dividends received from domestic corporations, $11,626.12; and gain derived from the sale of 2,500 shares of Pacific Gas & Electric Company common stock, $677.65. During the calendar year 1934, petitioner sustained losses on sales of securities which were capital assets within the meaning of Section 117(b) of the Internal Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 707, in the amount of $167,437.18. Petitioner's ordinary and necessary expenses incurred in connection with earning income from sources within the United States during the calendar year 1934 totaled $1,283.77.

The Board of Tax Appeals held that petitioner's failure to file its normal income tax return (Form 1120) until after the Commissioner had filed a return for it under the authorization of section 3176 of the Revised Statutes, deprived petitioner of any deductions it might ordinarily be entitled to claim in the computation of its normal income tax; and that the 25% penalty imposed by section 291 of the Internal Revenue Act of 1934, 26 U.S.C.A. Int.Rev.

Acts, page 750, for a late filing was also applicable.

Accordingly, and pursuant to a computation by the Commissioner of Internal Revenue which was accepted by petitioner, the Board of Tax Appeals found (1) a deficiency in income tax for the year 1934 in the sum of $1,691.77; (2) a penalty thereon in the sum of $422.94 and (3) no deficiency in personal holding company surtax for the year 1934.

Petitioner has duly appealed from the first two determinations of the Board. We are of the opinion that the Board was correct in each instance.

Petitioner is a foreign corporation and therefore subject to the special provisions of the Internal Revenue Act of 1934 applicable to such corporations. Of particular significance is section 233 of that Act which conditions the legislative grant of deductions and provides:

"Allowance of deductions and credits

"A *foreign corporation shall receive the benefit of the deductions and credits allowed* to it in this title [chapter] *only* by filing or causing to be filed with the collector *a true and accurate return* of its total income received from all sources in the United States, *in the manner prescribed in this title* [chapter]; including therein all the information which the Commissioner may deem necessary for the calculation of such deductions and credits." (Italics ours.)

26 U.S.C.A. Int.Rev.Code, § 233.

It is true that this section contains no reference to a time element. Nevertheless, we feel that the so-called normal tax return filed by petitioner on Form 1120 was not a sufficient or timely compliance with Section 233 to entitle the petitioner to the deductions claimed therein. See, decided by this Court, Boone County Coal Corporation v. United States, 4 Cir., 1941, 121 F.2d 988.

Let us review the chronology and effect of petitioner's acts. On June 15, 1935, petitioner filed its personal holding company surtax return on Form 1120H. Examination of this return reveals that the *first* figure there reported is "Net income (as defined in Title I of the Revenue Act of 1934)", which is the *last or final* figure on the regular corporate income and excess profits tax return, Form 1120. Since dividends from domestic corporations were subject to surtax, although not subject to

normal tax, the second income figure called for in the surtax return is the total of such dividends.

In petitioner's Form 1120H return, its net income was stated to be a red figure of $1,445.37. The Commissioner was, consequently, without any information as to the manner in which this amount was computed since the petitioner had not filed the normal return which would have revealed exactly how this figure was reached. Extended efforts by the Commissioner to get petitioner to file a Form 1120 return voluntarily were unsuccessful. Accordingly, the Commissioner was forced by petitioner's inactivity and uncooperative attitude to prepare a return for petitioner, in which no deductions were allowed.

Shortly thereafter, on May 18, 1938, the Commissioner sent a notice of deficiency to petitioner based on the return. On August 9, 1938, the date on which the petition was filed with the Board, petitioner filed with the Collector at Baltimore, Maryland, a Form 1120 return which showed no tax due. This return for the first time presented the Commissioner with a breakdown of petitioner's income and claimed deductions. But even this belated return was not entirely accurate. For example, it omitted an item of income realized on the sale in the United States of 2,500 shares of Pacific Gas & Electric Company common stock, while it included interest received from a foreign corporation, which did not constitute income from a source within the United States under Section 119 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 709. In addition, a deduction of $50.00 for Newfoundland taxes was erroneously taken.

The difficulty here encountered by the Commissioner in attempting to ascertain the petitioner's correct income tax is a striking example of the many administrative problems inherent in the application of the federal income tax to foreign corporations. This has prompted Congress to impose special conditions on such corporations. Indeed, unless a foreign corporation is induced voluntarily to advise the Commissioner of *all* of its income attributable to sources within the United States and of the *exact* nature of all deductions from such income, the Commissioner may never learn even of the corporation's existence, and, in any event, he will probably be unable to determine the correct amount of its taxable income.

The situation is pregnant with possibilities of tax evasion. In express recognition of this fertile danger to the orderly administration of the income tax as applied to foreign corporations, Congress *conditioned* its grant of deductions upon the timely filing of true, proper and complete returns. This is in addition, of course, to the 25% penalty provided by Section 291 of the 1934 Act for both *foreign and domestic* corporations which either file no return or a late return unless "reasonable cause" for the failure to file a timely return is shown. 26 U.S.C.A. § 291.

■ That Congress intended the condition in Section 233 to be strictly applied is apparent both from the use of the limitation "only" and from the fact that the "reasonable cause" exception relating to the 25% penalty was not included in Section 233.

This conclusion finds further support in the legislative history of Section 217 of the Revenue Act of 1918, 40 Stat. 1069, which allowed nonresident aliens the benefit of certain deductions and credits upon complying with specified conditions. The statute reads:

"Nonresident Aliens—Allowance Of Deductions And Credits

"Sec. 217. That a nonresident alien individual shall receive the benefit of the deductions and credits allowed in this title *only by filing or causing to be filed with the collector a true and accurate return* of his total income received from all sources corporate or otherwise in the United States, in the manner prescribed by this title, including therein all the information which the Commissioner may deem necessary for the calculation of such deductions and credits: * * *." (Italics ours.)

It will thus be noted that Section 233 relating to foreign corporations, which made its first appearance in the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 419, is almost verbally identical with this section governing nonresident aliens which has been a part of the revenue laws since 1918. The application of Section 217 of the 1918 Act is clear. From the outset the Treasury Regulations have expressly provided that no deductions were allowable to nonresident aliens unless an accurate and complete return was filed, and the filing of the return by the Commissioner fixed the tax liability. Article 311 of Treasury Regulations 45 provides:

*"Allowance of deductions and credits to non-resident alien individual.*—Unless a non-resident alien individual shall render a return of income as required in article 404, the tax shall be collected on the basis of his gross income (not his net income) from sources within the United States. Where a non-resident alien has various sources of income within the United States, so that from any one source or from all sources combined the amount of income shall call for the assessment of a surtax, and a return of income shall not be filed by him or on his behalf, *the Commissioner will cause a return of income to be made and include therein the income of such non-resident alien from all sources concerning which he has information, and he will assess the tax and collect it from one or more of the sources of income within the United States of such nonresident alien, without allowance for deductions or credits."* (Italics ours.)

◼ The foregoing regulation states specifically that deductions are allowable to a nonresident alien *only* if a return is filed, *and,* if no return has been filed at the time the Commissioner prepares a return for the taxpayer, the tax shall be assessed with no allowance for deductions. Congress may be presumed to have adopted this long-standing administrative construction when it enacted and reenacted Section 233. Brewster v. Gage, 1930, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457, Morgan v. Commissioner, 1940, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035.

◼ The conclusion that the preparation of a return by the Commissioner a reasonable time after the date it was due terminates the period in which the taxpayer may enjoy the privilege of receiving deductions by filing its own return, is consistent not only with the intention of Congress as evidenced by the legislative history of Section 233, but also with considerations of sound administrative procedure and the generally accepted rule concerning the number of returns which may be filed.

This terminal date, which the Board of Tax Appeals first adopted in Taylor Securities v. Commissioner, 1939, 40 B.T.A. 696, is directed against those foreign corporations which instead of being induced voluntarily to advise the Commissioner of their domestic operations, might find their interests best served by filing no return whatever, and then waiting until such time, *if any,* as the Commissioner discovers their existence and acquires sufficient information about their income on which to base a return. Unless they are precluded from then obtaining the deductions and credits under such circumstances, such foreign corporation can, *if detected,* come in for the first time after the Commissioner has made a return and suffer no economic loss other than the general 25% late filing penalty *which applies to domestic as well as foreign corporations.*

◼ Without prescribing an absolute and rigid rule that whenever the Commissioner files a return for a foreign corporation the taxpayer is completely and automatically denied the benefit of deductions or credits, we yet hold that the facts of the instant case justify a disallowance of deductions which petitioner might otherwise have been entitled to claim, had it filed a *timely* return in compliance with the statutory requirement.

This necessity for requiring strict compliance with the provisions granting deductions and credits to nonresident aliens and foreign corporations has been generally recognized. In Gladstone Co. v. Commissioner, 1937, 35 B.T.A. 764, appeal dismissed by the Second Circuit Court of Appeals without opinion, June 24, 1938, the Board held that a foreign corporation which had filed a late return was not entitled to deductions for dividends received since it had failed to show the breakdown of the dividends in Schedule H of the return. Said the Board, 35 B.T.A. at page 768:

"Petitioner did not fill in schedule H, nor give the information there sought. *Deductions are not a matter of right but of legislative grace and statutory grant, and the taxpayer must bring himself strictly within the provisions of the statute to be entitled to them.* Petitioner here, we think, ignored the very purpose of section 233, which provides that the return shall include information deemed necessary by the Commissioner, and not having given such information, did not bring itself within the requirements of the statute and the deduction must be denied. *To hold otherwise would render the entire provisions of the statute a nullity."* (Italics ours.)

◼ In the light of the foregoing quotation, it seems clear that petitioner's contention that the filing of a Form 1120H surtax return satisfied the requirement of

filing a Form 1120 return is without merit. Section 233 specifies a "true and accurate return" filed "in the manner prescribed in this title [chapter]". That can relate only to the normal tax return, Form 1120, required by Sections 52, 53, 26 U.S.C.A. Int.Rev.Acts, page 683. The personal holding company return on Form 1120H does not contain all the information which the Commissioner "deems necessary" for the calculation of deductions and credits in respect of normal tax liability.

In the instant case, for example, the 1120H return provided the Commissioner with no information not already in his possession since the only detailed information contained therein was the breakdown of dividends from domestic corporations. The corporation information returns for the year 1934 filed by domestic corporations contain all information on dividend payments in excess of $300. Since all of the payments here were in excess of that amount, the Commissioner was undoubtedly informed in respect to them entirely apart from the return on Form 1120H.

In addition, there is no requirement in a return on Form 1120H for a schedule showing "Reconciliation of Net Income and Analysis of Changes in Surplus", nor is there provision for the schedule "Balance Sheets". Form 1120H also requires only 17 items, while Form 1120 requires 27. Petitioner's net income figure of $1,445.37, reported as Item 1 on Form 1120H, is Item 27 on Form 1120, arrived at after consideration of the prior 26 items. It was only natural, therefore, that the Commissioner, presented with this isolated net income figure (which was a red figure indicating a minus amount) should request further information as to just how this result was computed.

■ It would also seem clear that the normal tax and the surtax, here in dispute, are separate and distinct taxes. Revenue Act of 1934, Title 1, Title 1A, 26 U. S.C.A. Int.Rev.Acts, pages 664 et seq., 757 et seq.; cf. Taylor Securities, Inc., v. Commissioner, 1939, 40 B.T.A. 696. And the Revenue Act itself undoubtedly contemplates the filing of separate returns for these taxes. See Sections 52, 53, 54 and 351 of the Revenue Act of 1934, 26 U.S.C. A. Int.Rev.Acts, pages 683, 684, 757. Moreover, the Board of Tax Appeals has consistently held that the filing of a Form 1120 return does not excuse the failure to file a Form 1120H return. Collateral Mort-

gage and Investment Co. v. Commissioner, 1938, 37 B.T.A. 630; Rotorite Corporation v. Commissioner, 1939, 40 B.T.A. 1304, reversed on other grounds, 7 Cir., 1941, 117 F.2d 245; Noteman v. Welch, 1 Cir., 1939, 108 F.2d 206.

■ Therefore, the single surtax return filed by petitioner was insufficient for normal tax purposes, and the sanction provided by section 233 must accordingly be applied. Gladstone Co., Ltd., v. Commissioner, 1937, 35 B.T.A. 764. This is in accord with the well accepted principle of tax law controlling the election of filing of returns by taxpayers, namely, that the federal income tax procedure provides for and contemplates the filing of only one return by a taxpayer for a single tax period and any subsequent return is a nullity. Buttolph v. Commissioner, 7 Cir., 1928, 29 F. 2d 695; Grant v. Rose, D.C.N.D.Ga. 1928, 24 F.2d 115, affirmed, 5 Cir., 1930, 39 F. 2d 338; Morris v. Commissioner, 2 Cir., 1930, 40 F.2d 504. Cf. Scaife Co. v. Commissioner, 62 S.Ct. 338, 86 L.Ed. ——, decided by U. S. Supreme Court, December 22, 1941; Helvering v. Lerner Stores Corp., 62 S.Ct. 341, 86 L.Ed. ——, decided by U. S. Supreme Court, December 22, 1941.

Petitioner also contends that the Commissioner, in preparing the return, should have allowed the dividends as deductions, citing Ardbern Co., Ltd., v. Commissioner, 4 Cir., 1941, 120 F.2d 424. There the taxpayer attempted to file a return with a revenue agent who refused to accept the return and failed to advise the taxpayer that the return should correctly be filed with the Collector of Internal Revenue at Baltimore. Thereafter, the Commissioner filed his own return under Section 3176, Revised Statutes, allowing no deductions even though he had knowledge before he prepared the return and before he issued the deficiency notice of certain deductions to which the taxpayer was entitled. Subsequently, the taxpayer did file a return with the Collector and we held that, *under those facts,* the taxpayer was entitled to the deductions as a matter of "elementary justice". Judge Northcott carefully stated, at page 426 of 120 F.2d: "* * * at least, [the] taxpayer should be allowed such deductions when, upon the assessment of a deficiency against him, *he shows that prior to its assessment he attempted in good faith to file a return in which such deductions were claimed.* * * * The return made by the Commissioner was clearly not

based upon the best available information." (Italics ours.)

 A substantially different factual situation is presented in the case before us. Here the Commissioner prepared a return *only* after he had unsuccessfully made repeated requests to the taxpayer to do so, and only after the taxpayer had flouted all of these requests. Then, after the Commissioner had assessed a deficiency on the basis of his return, but only then, the petitioner filed its petition for review by the Board and also a return.

Unless the deductions are here denied, Section 233 will become a meaningless provision, for if, after the Commissioner has earnestly attempted to obtain a return by the taxpayer and has waited a reasonable time before filing his own return, the taxpayer may still enjoy the privilege of all deductions and credits, there is then no inducement to *foreign* corporations voluntarily to file timely returns. In the absence of demonstrable fraud, they will, by self-serving uncooperative conduct, suffer no loss other than the general late filing penalty which is applicable to *domestic* as well as *foreign corporations*. Such a construction of the statute would put a premium on tax evasion and would reduce the administration of the tax laws to mere idle activity.

Section 291 of the Revenue Act of 1934 provides:

"Failure to File Return

"In case of any failure to make and file a return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, 25 per centum of the tax shall be added to the tax, except that when a return is filed after such time and it is shown that the failure to file it was due to reasonable cause and not due to willful neglect no such addition shall be made to the tax. * * *" (26 U.S.C.A. Int.Rev.Acts, page 750.)

 Since the taxpayer advanced no adequate reason to explain why the Form 1120 return was not made and filed in accordance with Section 233 of the Revenue Act of 1934, the taxpayer is clearly liable for the penalty provided in Section 291. Noteman v. Welch, 1 Cir., 1939, 108 F.2d 206. "It does not matter why he failed to file a return." Harry D. Kremer v. Commissioner, 1934, 31 B.T.A. 566.

We, accordingly, affirm the decision of the Board of Tax Appeals.

Affirmed.