107 T.C. No. 9


UNITED STATES TAX COURT


GUILLERMO BAEZ ESPINOSA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8900-94.                    Filed September 24, 1996.


        P, a nonresident alien individual, failed to file
Federal income tax returns for the years 1987 through 1991.
R repeatedly notified P of his failure to file.  R prepared
substitute returns for P and notified P that pursuant to
sec. 874(a), I.R.C., no deductions were allowable.  P
subsequently submitted returns claiming the benefit of
deductions.  R then issued a notice of deficiency.  Held: P
is not entitled to the benefit of deductions pursuant to
sec. 874(a), I.R.C.  Held, further, P is liable for
additions to tax pursuant to secs. 6651(a)(1) and 6654,
I.R.C.


John P. Bender, for petitioner.

Joni D. Larson, for respondent.

DAWSON, Judge:  This case was assigned to Special Trial Judge Carleton D. Powell pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1]  The Court agrees with and adopts the opinion of the Special Trial Judge that is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, Special Trial Judge:  Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows:

| | | Additions to Tax | |
| Taxable Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
|---|---|---|---|
| 1987 | $1,672 | $418 | $90.35 |
| 1988 | 1,729 | 432 | 108.99 |
| 1989 | 1,669 | 417 | 112.89 |
| 1990 | 4,017 | 389 | 264.50 |
| 1991 | 1,534 | 384 | 88.22 |

At the time of filing the petition, petitioner resided in Mexico.

The issues are:  (1) Whether section 874(a) prevents petitioner, who submitted a return after respondent prepared substitute returns but before respondent issued a notice of deficiency, from receiving the benefit of deductions otherwise allowable under subtitle A of the Internal Revenue Code, and (2) whether petitioner is liable for additions to tax pursuant to sections 6651(a)(1) and 6654.

---

[1]  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

The facts have been fully stipulated, and they are summarized below.

Guillermo Baez Espinosa (petitioner) was a nonresident alien individual during the taxable years 1987 through 1991. Petitioner owned two rental properties located in Austin, Texas (the Austin property) and Ruidoso, New Mexico (the Ruidoso property). The properties produced gross rental income during the years in issue in the following amounts:

| Property | 1987 | 1988 | 1989 | 1990 | 1991 |
|----------|------|------|------|------|------|
| Austin | $10,472 | $10,200 | $10,316 | $10,385 | $10,200 |
| Ruidoso | 1,138 | 1,324 | 804 | -0- | -0- |

When the expenses of producing the rental income including depreciation deductions are taken into account, each property produced an annual loss. Petitioner sold the Ruidoso property on February 1, 1990, for $13,000 incurring a loss on the sale in the amount of $13,315.[2]

Petitioner was required to file a Federal income tax return for each of the years in issue, and does not contend otherwise. Sec. 1.6012-1(b)(1)(i), Income Tax Regs. For petitioner's

---

[2] In the notice of deficiency respondent determined that petitioner was liable for income tax on the $13,000 received from the sale of the Ruidoso property, with no offset of basis. Respondent concedes that sec. 874(a) allows petitioner to use the basis in the property to determine the amount of the gain or loss. Sec. 874(a) does, however, deny a deduction for a loss under sec. 165.

taxable years 1987 through 1991, his Federal income tax returns were due on June 15 of the year following the close of the taxable year.  Sec. 6072(c).  As of November 13, 1992, petitioner had not filed any Federal income tax returns for the years in issue.  On that date, respondent mailed a letter to petitioner asking him if he had filed returns and, if he had not, instructing him to file returns or otherwise respond.  That letter also stated that, if petitioner did not respond by December 1, 1992, respondent would file substitute returns for him.  Petitioner did not respond, and on January 12, 1993, respondent again wrote petitioner with the same request, adding that, if there was no response within 20 days, "your tax liability [will be determined] based on the information we have." Again petitioner did not respond.  On February 3, 1993, respondent notified petitioner that respondent had filed substitute returns for the taxable years 1987 through 1991.  On March 23, 1993, respondent informed petitioner that the substituted returns were computed without the benefit of any deductions.

On October 7, 1993, petitioner submitted Federal income tax returns for all the years in issue.  The returns reflected the net losses from the rental properties described above.  Each return contained an election pursuant to section 871(d), to treat

the rental income as if it was effectively connected with a trade or business within the United States.

On January 13, 1994, respondent issued a notice of deficiency to petitioner for the taxable years 1987 through 1991. In the notice of deficiency, respondent determined that petitioner was liable for deficiencies and additions to tax in the above listed amounts. Respondent treated petitioner's income as effectively connected with a U.S. trade or business, but determined that petitioner was not entitled to the benefit of any deductions pursuant to section 874(a). For each year in issue, respondent further determined that petitioner is liable for additions to tax for failure to file tax returns pursuant to section 6651(a)(1) and for failure to pay estimated tax pursuant to section 6654.

OPINION

## Section 874(a)

In order to understand the primary issue it is useful to briefly explore the taxation of rental income of nonresident alien individuals under the Internal Revenue Code. Under section 871(a)(1)(A) the "amount" from rents received by a nonresident alien individual that is not effectively connected with the conduct of a trade or business within the United States is taxed at a 30-percent rate. This 30-percent rate is imposed on gross rental income. See sec. 1.871-7(a)(3), Income Tax Regs. A

nonresident alien individual engaged in a trade or business within the United States is taxed on the "taxable income" effectively connected with that trade or business at the graduated rates of tax (graduated rates), applicable to U.S. residents enumerated in section 1.  Sec. 871(b)(1).  "Taxable income" means gross income reduced by allowable deductions. Secs. 3(d), 63(a).  In determining taxable income, generally, deductions "shall be allowed * * * only if and to the extent that they are connected with income which is effectively connected with the conduct of a trade or business within the United States".  Sec. 873(a).  Thus, there may be a dramatic difference in the tax treatment of rental income depending on whether the income is effectively connected with a trade or business.  If the income is effectively connected with a trade or business, deductions are allowed (unless barred by sec. 874, as discussed infra) and the graduated tax rates in section 1 apply.  If the income is not effectively connected with a trade or business, no deductions are allowed, and the gross rental income is taxed at a 30-percent rate.

Because of the uncertainties in determining whether a rental activity constitutes a trade or business, Congress has provided an election under section 871(d).  See S. Rept. 1707, 89th Cong. 2d Sess. (1966), 1966-2 C.B. 1055, 1076-1077.  Section 871(d)(1) provides that a nonresident alien individual who derives any

income from real property located in the United States may elect to treat all such income as though it were effectively connected with a trade or business within the United States. Under the regulations, an election under section 871(d) is made by "filing with the income tax return required under section 6012 and the regulations thereunder * * * a statement to the effect that the election is being made." Sec. 1.871-10(d)(1)(ii), Income Tax Regs. Respondent has treated petitioner's rental income as effectively connected with a trade or business within the United States, and there is no question before the Court as to whether petitioner's election is valid.

With these provisions in mind we now turn to section 874(a) which, in pertinent part, provides:

> Return Prerequisite to Allowance.--A nonresident alien individual shall receive the benefit of the deductions and credits allowed to him in this subtitle only by filing or causing to be filed with the Secretary a true and accurate return, in the manner prescribed in subtitle F (sec. 6001 and following, relating to procedure and administration), including therein all the information which the Secretary may deem necessary for the calculation of such deductions and credits. * * *

Thus, in dealing with rental income, there are three possible computations of tax liability facing a nonresident alien individual: (1) If the rental income is not effectively connected with a trade or business within the United States, and no election is made under section 871(d), then the tax is computed at the 30-percent rate on gross rental income under

section 871(a); (2) if the income is effectively connected with a trade or business within the United States, or if an election is made to treat the income as effectively connected, the tax is computed pursuant to section 871(b), on net rental income at the graduated rates prescribed by section 1, provided that the taxpayer has filed a return as required by section 874(a); and (3) where the income is effectively connected and the taxpayer fails to file a tax return as required by section 874(a), the tax is computed on gross rental income at the graduated rates prescribed in section 1.

Petitioner, while recognizing that section 874(a) disallows deductions if no return is filed, asserts that he did file returns for the years in question. The issue, therefore, is whether the returns submitted on October 7, 1993, after respondent notified petitioner that he had not filed returns and after respondent prepared returns for petitioner but before the notice of deficiency was issued, satisfy the requirements of section 874(a).

On its face, section 874 contains no time limit within which a nonresident alien must file an income tax return. For taxable years ending after July 31, 1990, the regulations explicitly create a timely filing requirement. Section 1.874-1(b)(1), Income Tax Regs., as amended by T.D. 8322, 1990-2 C.B. 172, 173, provides, inter alia, that

(b) <u>Filing deadline for return</u>--(1) <u>General rule</u>.
* * *  If no return for the taxable year immediately
preceding the current taxable year has been filed, the
required return for the current taxable year (other
than the first taxable year of the nonresident alien
individual for which a return is required to be filed)
must have been filed no later than the earlier of the
date which is 16 months after the due date, as set
forth in section 6072, for filing the return for the
current taxable year or the date the Internal Revenue
Service mails a notice to the nonresident alien
individual advising the nonresident alien individual
that the current year return has not been filed and
that no deductions or credits * * * may be claimed by
the nonresident alien individual.

On March 23, 1993, respondent sent petitioner a so-called
doomsday letter[3] notifying petitioner that returns had been filed
by respondent, and that deductions and certain credits could no
longer be claimed.  Petitioner's returns were not submitted
until October 7, 1993.  Accordingly, petitioner does not satisfy
the conditions of the regulation for either the 1990 or 1991
taxable year.  Petitioner, however, contends that this regulation
is invalid for various reasons.  We will address this argument
later.

Prior to 1990, the regulations under section 874 only
addressed the problem by implication.  Section 1.874-1(c), Income

---

[3]  Wright H. Schickli coined the term "doomsday letter" to
refer to the Internal Revenue Service notice described in sec.
1.874-1(b), Income Tax Regs., that cuts off or restricts a
nonresident alien individual's ability to claim deductions.
Schickli, "New House Rules for Foreign Taxpayers that Play the
U.S. Audit Lottery", 43 Tax Lawyer 915, 953 (1990).

Tax Regs. (T.D. 6258, 1957-2 C.B. 368, 404-405), old section

1.874-1, Income Tax Regs.,[4] provided that if no return was filed

> the district director (or, if applicable, the Director of
> International Operations) shall (1) cause a return of income
> to be made, (2) include therein the income described in sec.
> 1.871-7 of that individual * * *, without allowance for
> deductions * * *.

Therefore, for petitioner's taxable years 1987, 1988, and 1989 we

must decide whether section 874(a) implicitly created a timely

filing requirement.  Furthermore, since the validity of the new

regulation is called into question, this analysis will also be

relevant for the taxable years 1990 and 1991.

Section 874(a) has its genesis, Revenue Act of 1918, ch. 18,

sec. 217, 40 Stat. 1057, 1069.  Section 217 was reenacted

throughout the years.[5]  When carried forward into the Internal

Revenue Code of 1954 as section 874, section 874 was "identical

in substance with sections 215 and 216, 1939 Code."  H. Rept.

1337, 83d Cong., 2d Sess. A245 (1954).  A parallel provision,

dealing with foreign corporations, was enacted as section 233 of

the Revenue Act of 1928, ch. 852, 45 Stat. 849.   This provision

---

[4]   Old sec. 1.874-1, Income Tax Regs., had its origins in
Regs. 45, art. 311, promulgated under the Revenue Act of 1918,
ch. 18, 40 Stat. 1057.  That section was repromulgated throughout
the years.  See, e.g., Regs. 65, art. 331; Regs. 69, art. 331;
Regs. 74, art. 1071; Regs. 77, art. 1071; sec. 39.215, Regs. 118.

[5]   See, e.g., Revenue Act of 1924, ch. 234, sec. 217(g), 43
Stat. 275; Revenue Act of 1926, ch. 27, sec. 217(g), 44 Stat. 32;
Revenue Act of 1928, ch. 852, sec. 215(a), 45 Stat. 848; Revenue
Act of 1932, ch. 208, sec. 215(a), 47 Stat. 229; Internal Revenue
Code of 1939, ch. 2, sec. 215, 53 Stat. 77.

was reenacted throughout the years,[6] and carried into current section 882(c)(2).[7]

Sections 874(a) and 882(c)(2) are draconian provisions designed to induce foreign corporations and nonresident alien individuals to file tax returns. In <u>Blenheim Co. v. Commissioner</u>, 125 F.2d 906, 909 (4th Cir. 1942), affg. 42 B.T.A. 1248 (1940), the Court of Appeals for the Fourth Circuit explained:

> Indeed, unless a foreign corporation is induced voluntarily to advise the Commissioner of <u>all</u> of its income attributable to sources within the United States and of the <u>exact</u> nature of all deductions from such income, the Commissioner may never learn even of the corporation's existence, and, in any event, * * * [the Commissioner] will probably be unable to determine the correct amount of its taxable income.
>
> The situation is pregnant with possibilities of tax evasion. In express recognition of this fertile danger to the orderly administration of the income tax as applied to foreign corporations, Congress <u>conditioned</u> its grant of deductions upon the timely filing of true, proper and complete returns. * * *

While both sections 874(a) and 882(c)(2) are venerable, there are few cases dealing with these provisions. In fact, there are no cases dealing squarely with the application of

---

[6] Sec. 233 of the Revenue Act of 1932, 47 Stat. 230, provided that "A foreign corporation shall receive the benefit of the deductions and credits allowed to it in this title only by filing or causing to be filed with the collector a true and accurate return * * * in the manner prescribed in this title".

[7] The language of sec. 882(c)(2) is virtually identical to the language of sec. 874(a) except that sec. 882(c)(2) uses the words "foreign corporation" in place of the words "nonresident alien individual".

section 874(a), or its predecessors, in the context of an untimely submitted return.[8]  However, more than half a century ago, the Board of Tax Appeals wrestled with the issue in a series of cases that arose under the predecessor to section 882(c)(2). Because of the similarity of sections 874(a) and 882(c)(2), in both language and the intent of the provisions, we interpret them in pari materia.

In Anglo-American Direct Tea Trading Co. v. Commissioner, 38 B.T.A. 711 (1938), a revenue agent prepared overdue returns for a foreign corporation, without notifying the corporation, 3 days before the corporation filed its own returns.  Apparently, the returns prepared by the revenue agent were never submitted to, or accepted by, the Commissioner.  Nevertheless, the Commissioner determined that the corporation was not entitled to any deductions because the returns were not filed timely.  The Board of Tax Appeals, the predecessor of this Court (sometimes herein referred to as the Board), held that section 233 of the Revenue Act of 1928, ch. 852, 45 Stat. 849, and Revenue Act of 1932, ch. 209, 47 Stat. 230, did not include a requirement that the returns

---

[8]  See, however, Brittingham v. Commissioner, 66 T.C. 373, 408-409 (1976), affd. per curiam 598 F.2d 1375 (5th Cir. 1979); Inverworld, Inc. v. Commissioner, T.C. Memo. 1996-301; Ross v. Commissioner, 44 B.T.A. 1 (1941), vacated and remanded per stipulation 43-2 USTC par. 9686 (4th Cir. 1943); Roerich v. Commissioner, 38 B.T.A. 567 (1938), affd. 115 F.2d 39 (D.C. Cir. 1940); Furst v. Commissioner, 19 B.T.A. 471 (1930).  In these cases, no returns were filed, and the question whether returns were timely was not at issue.

be filed timely within the meaning of section 235 (currently section 6072(c)).  Therefore, the foreign corporation was entitled to the benefit of deductions even though its returns were not filed timely.  Id. at 716.

In Mills, Spence & Co. v. Commissioner, a Memorandum Opinion of this Court dated Oct. 5, 1938, the Board of Tax Appeals followed its decision in Anglo-American Direct Tea Trading Co. v. Commissioner, supra.  On July 19, 1934, the Commissioner sent a letter to a foreign corporation advising the corporation that its returns had not been filed for the taxable years 1929 through 1933.  In February 1936, after several rounds of correspondence, attorneys filed the corporation's income tax returns. Thereafter, the Commissioner disallowed the deductions claimed on those returns and issued a notice of deficiency.  The Board held the corporation was entitled to the deductions, stating:  "It is unnecessary to assign any reason for such conclusion other than to say that our decision on this point is clearly controlled by the holding of the Board in Anglo-American".  Mills, Spence & Co. v. Commissioner, supra.

The Board of Tax Appeals next addressed the issue in Taylor Sec., Inc. v. Commissioner, 40 B.T.A. 696 (1939).  In Taylor Sec. a foreign corporation filed its returns after the Commissioner had filed substitute returns and issued a notice of deficiency. The Board held that the foreign corporation was not entitled to

the claimed deductions.  The Board distinguished Anglo-American Direct Tea Trading Co. v. Commissioner, supra, on the grounds that in Anglo-American the returns prepared by the revenue agent were never accepted by the Commissioner, the taxpayer's delinquent returns were audited (not the returns prepared by the revenue agent), and the returns were filed by the taxpayer before the notice of deficiency was issued.  Taylor Sec., Inc. v. Commissioner, supra at 702-703.

A year later in Blenheim Co. v. Commissioner, 42 B.T.A. 1248, 1251 (1940), affd. 125 F.2d 906 (4th Cir. 1942), the Board followed Taylor Sec., Inc. v. Commissioner, supra, where a foreign corporation filed a timely personal holding company return (Form 1120H) for the taxable year 1934, but failed to file a corporate income tax return (Form 1120).  The only income shown on the Form 1120H consisted of dividends received from domestic corporations.  The Commissioner notified the corporation that a Form 1120 had not been filed on its behalf and requested that it be filed.  The secretary of the corporation ignored these requests because he believed the Form 1120H contained all the information required to compute the corporation's tax liability. In addition, he believed the corporation was not required to file a Form 1120 since, at that time, dividends received from a domestic corporation were not subject to Federal income tax.  The Commissioner subsequently prepared a return for the corporation

and issued a notice of deficiency.  Thereafter, the corporation's secretary filed a Form 1120 for the year in question.  The Board held that the filing of Form 1120H did not satisfy the requirements of section 233 of the Revenue Acts of 1928 and 1932 because the personal holding company surtax was a separate and distinct tax from the corporate income tax.  The Board went on to distinguish its holding in Anglo-American Direct Tea Trading Co. v. Commissioner, supra, noting that

> Undoubtedly a taxpayer may litigate a determination of respondent on the basis of a return made by * * * [respondent].  But, a "return" filed by a taxpayer after such a return has been prepared and filed for him by respondent, under the circumstances existing here, is a nullity and does not comply with section 233, supra.  The taxpayer can not thus take advantage from an alleged return submitted by the taxpayer not only after respondent's filing of its return * * * but also after the issuance of a notice of deficiency. * * * [Blenheim Co. v. Commissioner, 42 B.T.A. at 1251.]

The Court of Appeals for the Fourth Circuit affirmed the Board of Tax Appeals.  However, rather than simply relying on Taylor Sec., Inc. v. Commissioner, supra, the Court of Appeals for the Fourth Circuit placed emphasis on the fact that the taxpayer filed a return after the Commissioner had prepared a substitute return for the taxpayer.  The Court stated:

> The conclusion that the preparation of a return by the Commissioner a reasonable time after the date it was due terminates the period in which the taxpayer may enjoy the privilege of receiving deductions by filing its own return, is consistent not only with the intention of Congress * * * but also with considerations of sound administrative procedure and

the generally accepted rule concerning the number of returns which may be filed.

*       *       *       *       *       *       *

Without prescribing an absolute and rigid rule that whenever the Commissioner files a return for a foreign corporation the taxpayer is completely and automatically denied the benefit of deductions or credits, we yet hold that the facts of the instant case justify a disallowance of deductions which petitioner might otherwise have been entitled to claim, had it filed a timely return in compliance with the statutory requirement. [Blenheim Co. v. Commissioner, 125 F.2d 906, 910 (4th Cir. 1942), affg. 42 B.T.A. 1248 (1942).]

In Georday Enterprises v. Commissioner, 126 F.2d 384 (4th Cir. 1942), affg. a Memorandum Opinion of the Board of Tax Appeals dated Sept. 30, 1940, a companion case to Blenheim Co. v. Commissioner, supra, the Board denied deductions under section 233 of the Revenue Acts of 1928 and 1932. The Court of Appeals for the Fourth Circuit affirmed on the basis of Blenheim noting that the case for the disallowance was even stronger because the taxpayer did not attempt to file a return until after a petition had been filed with the Board.

One other case deserves some discussion. In Ardbern Co. v. Commissioner, 41 B.T.A. 910 (1940), modified and remanded 120 F.2d 424 (4th Cir. 1941), the taxpayer, a foreign corporation, proffered income tax returns to a revenue agent prior to the date the Commissioner prepared returns and issued a notice of deficiency. The revenue agent refused to accept the returns because they were required to be filed with the Collector of

Internal Revenue at Baltimore, Maryland.  However, in refusing to accept the returns the revenue agent failed to instruct the taxpayer how to properly file them; he simply stated that the returns were improperly executed.  The Board sustained the Commissioner's disallowance of deductions.  The Court of Appeals for the Fourth Circuit reversed.  However, the same Court of Appeals later noted in Blenheim Co. v. Commissioner, 125 F.2d at 912, that Ardbern was distinguishable:

> A substantially different factual situation is presented in the case before us.  Here the Commissioner prepared a return only after he had unsuccessfully made repeated requests to the taxpayer to do so, and only after the taxpayer had flouted all of these requests. * * *

From these cases we make the following observations. First, although section 874(a) contains no express time limit, at some point there exists a terminal date, after which a taxpayer can no longer claim the benefit of deductions by filing a return. Blenheim Co. v. Commissioner, 42 B.T.A. 1248 (1940); Taylor Sec., Inc. v. Commissioner, 40 B.T.A. 696 (1939).  Second, while a terminal date does exist, the timely filing requirements of section 6072(c) are not determinative as to whether a taxpayer is entitled to the benefit of deductions.  Anglo-American Direct Tea Trading Co. v. Commissioner, 38 B.T.A. 711 (1938).  Third, absent some compelling equitable considerations, such as those existing in Ardbern Co. v. Commissioner, supra, a taxpayer cannot claim the benefit of deductions by filing a return after the

Commissioner has prepared a substitute return and issued a notice of deficiency.  Blenheim Co. v. Commissioner, supra; Taylor Sec., Inc. v. Commissioner, supra.

In this case we decide whether a nonresident alien individual may avoid the sanctions of section 874(a) by filing returns after the Commissioner has prepared substitute returns for him, but before the notice of deficiency is issued. Petitioner first argues that, since there is no explicit terminal date in the statute, a taxpayer may file delinquent returns at any time and avoid the proscription of section 874(a).  In the alternative, petitioner contends that if there is a terminal date that date should be the issuance of the notice of deficiency, and not the filing of the return prepared by the Commissioner. Where, as here, the Commissioner has notified the taxpayer that he has not filed a return and has given the taxpayer a reasonable time within which to file a return, we disagree with both arguments.

As we have already discussed, while sections 874(a) and 882(c)(2) contain no explicit time limit, the policy behind these provisions, as applied by the case law, dictates that there is a cut-off point or terminal date after which it is too late to submit a tax return and claim the benefit of deductions.  If no cut-off point existed, taxpayers would have an indefinite time to file a return, and these provisions would be rendered

meaningless. "To hold otherwise would render the entire provisions of the statute a nullity." Gladstone Co. v. Commissioner, 35 B.T.A. 764, 768 (1937). The prior case law established the terminal date as a mechanism designed to ensure that sections 874(a) and 882(c)(2) would have the in terrorem effect that Congress intended. The Court of Appeals for the Fourth Circuit explained:

> This terminal date, which the Board of Tax Appeals first adopted in Taylor Securities v. Commissioner, 1939, 40 B.T.A. 696, is directed against those foreign corporations which instead of being induced voluntarily to advise the Commissioner of their domestic operations, might find their interests best served by filing no return whatever, and then waiting until such time, if any, as the Commissioner discovers their existence and acquires sufficient information about their income on which to base a return. Unless they are precluded from then obtaining the deductions and credits under such circumstances, such foreign corporation can, if detected, come in for the first time after the Commissioner has made a return and suffer no economic loss other than the general 25% late filing penalty which applies to domestic as well as foreign corporations. [Blenheim Co. v. Commissioner, 125 F.2d at 910.]

The second aspect of petitioner's argument is that a taxpayer may avoid section 874(a) by submitting returns prior to the issuance of the notice of deficiency. We do not believe, however, that the Congressional intent in enacting section 874(a) would be furthered by a rule that always lets a taxpayer wait and see what information the Commissioner puts on a substitute return before the taxpayer has to file a return of his own.

The facts in this case point out our concerns. When respondent first contacted petitioner concerning his failure to

file, petitioner had filed no Federal income tax returns for 5 years. Only after a second warning and the expiration of 3 more months, during which time petitioner failed to respond, did respondent prepare substitute returns for petitioner. Eight more months passed before petitioner submitted his own returns. We see no reason to reward such tactics.

With respect to the taxable years 1990 and 1991, petitioner essentially contends that section 1.874-1(b)(1), Income Tax Regs., is invalid. Given the posture of this case, however, there is no reason to delve into the validity of this new regulation. Under the factual circumstances here the regulation confers no additional rights on petitioner, and even if we were to hold some portion of this regulation invalid, petitioner would not prevail under our analysis of the provisions of section 874(a) and the relevant case law.

There is one area of the new regulation, however, that deserves some mention. For the 1991 taxable year, petitioner submitted his return before the 16-month time limit set forth in 1.874-1(b)(1), Income Tax Regs., had expired, but well after respondent had sent petitioner the so-called doomsday letter notifying him that he was not entitled to claim any deductions for that year. As stated, however, respondent repeatedly notified petitioner of his failure to file returns prior to sending a doomsday letter.

We hold in the circumstances of this case that the submission of returns by petitioner after substitute returns had been prepared by respondent, and after petitioner had been notified that no deductions are allowable but prior to the issuance of the notice of deficiency, is insufficient to avoid the sanction of section 874(a).  We recognize that the application of section 874(a) in this case may appear draconian. That result, however, flows from the nature of the statute.  As we have suggested, were we to hold otherwise we essentially would reward petitioner for ignoring the repeated requests that he comply with the filing requirements of the Code.  By the same token we, as did the Court of Appeals for the Fourth Circuit in Blenheim Co. v. Commissioner, 125 F.2d 906 (4th Cir. 1942), affg. 42 B.T.A. 1248 (1940), decline at this time to adopt an absolute and rigid rule for all cases.

Petitioner also contends that respondent acted unreasonably in failing to grant a waiver of the filing deadlines set forth in section 1.874-1(b)(1), Income Tax Regs., as permitted by section 1.874-1(b)(2), Income Tax Regs.  Section 1.874-1(b)(2), Income Tax Regs., provides that the deadlines may be waived "in rare and unusual circumstances if good cause for such waiver, based on the facts and circumstances, is established by the nonresident alien individual."  As a preliminary matter, however, petitioner must establish that he requested a waiver.  Cf. Sisson v.

Commissioner, T.C. Memo 1994-545.  Petitioner has not shown that such a request was made.[9]  Furthermore, petitioner has not offered any reasons as to why, if the request had been made, it should have been granted.  Assuming, but not deciding, that we may have jurisdiction to review the disposition of such a request, we have no basis upon which to make a determination that respondent's action constituted an abuse of discretion.  Compare Mailman v. Commissioner, 91 T.C. 1079, 1082 (1988).

Lastly, petitioner contends that because section 1.874-1(a), Income Tax Regs., imposes a timely filing requirement on residents of foreign countries including Mexico as a prerequisite to receiving the benefit of deductions, and no such requirement is imposed on U.S. residents, the regulation violates the nondiscrimination clause in Article 25 of the Income Tax Treaty between Mexico and the United States.  United States-Mexico Income Tax Treaty, Sept. 18, 1992, Tax Treaties (CCH) par. 5903.27.  Petitioner's argument is not well taken.  While we question whether there is a conflict between section 874(a) and the provisions of the treaty, the treaty is effective for taxable

---

[9]   In the petition, petitioner alleged that he requested a waiver.  Respondent denied the allegation in the answer.  This case was submitted fully stipulated, and there is nothing in that stipulation establishing that petitioner requested a waiver or, if requested, the grounds for a waiver.

years beginning after 1993, and, therefore, does not apply to the taxable years in issue. Id. at par. 5903.31.[10]

Additions to Tax

Respondent determined that petitioner is liable for additions to tax for failure to file tax returns pursuant to section 6651(a)(1), and for failure to pay estimated tax pursuant to section 6654. Section 6651(a)(1) provides that

In the case of failure--

> (1) to file any return required under authority of subchapter A * * * unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.

The tax return of a nonresident alien individual is not due until the 15th day of the 6th month following the close of the taxable year. Sec. 6072(c). Petitioner does not dispute that the returns he submitted were untimely.

Section 6654 imposes an addition to tax on individuals for failure to pay estimated income tax. The amount of the addition is

determined by applying--

---

[10] In passing, we note that sec. 6114(a)(1) and sec. 301.6114-1(a)(1)(i), Proced. & Admin. Regs., provide that a taxpayer who asserts that a treaty provision overrides any internal revenue law must disclose that position on the return for such tax.

(1) the underpayment rate established under section 6621,

(2) to the amount of the underpayment,

(3) for the period of the underpayment.  [Sec. 6654(a).]

Unlike section 6651, the liability for the addition to tax under section 6654 does not depend on a lack of reasonable cause or the presence of willful neglect.

Petitioner has the burden of establishing that the additions to tax should not apply.  Rule 142(a).  Petitioner essentially contends that since respondent erroneously applied section 874(a) to disallow the deductions, there is neither an "amount [of tax] required to be shown", sec. 6651(a), nor an "underpayment of estimated tax", sec. 6654(a).  We have rejected that argument.  Applying section 874(a), statutory predicates for the additions to tax are present.  Furthermore, petitioner has not attempted to establish that he satisfied the reasonable cause or lack of willful neglect exceptions contained in section 6651(a)(1).  Accordingly, respondent's determinations as to the additions to tax under sections 6651(a)(1) and 6654 are sustained.

To reflect respondent's concession concerning the basis of the property sold,

Decision will be entered under Rule 155.